Kenneth J. Kelly
James S. Frank
Kenneth W. DiGia
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4500

Terence K. McLaughlin
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendants
New York-Presbyterian Healthcare System, Inc.,
Herbert Pardes and Wayne Osten

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASAHIRO NAKAHATA, DIANA GARDOCKI and
CYNTHIA DELANCY,

        **ECF CASE**

on behalf of themselves and all other employees similarly
situated,

        Docket No. 11-cv-6658 (PAC)

                Plaintiffs,      (RLE)

- against -

NEW YORK-PRESBYTERIAN HEALTHCARE
SYSTEM, INC., THE NEW YORK AND
PRESBYTERIAN HOSPITAL, HERBERT PARDES, M.D.
AND WAYNE OSTEN,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.'S, HERBERT PARDES' AND WAYNE OSTEN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

FIRM:17904320v1

# Table of Contents

Preliminary Statement.................................................................................................1

The History Of The Litigation .....................................................................................4

The Allegations .........................................................................................................6

System, Inc. ............................................................................................................7

Dr. Herbert Pardes ....................................................................................................8

Wayne Osten ...........................................................................................................8

Argument ................................................................................................................9

POINT I   RULE 12(B)(6) STANDARDS ON A MOTION TO DISMISS ...................................9

POINT II   PLAINTIFFS FAIL TO ALLEGE ANY FACTS SHOWING THAT
             ANY MOVING DEFENDANT WAS THEIR "EMPLOYER"..........................11

    A.   Plaintiffs' FLSA and NYLL Claims Should Be Dismissed Because
          Plaintiffs Fail to Plead Facts Sufficient to Show the Existence of an
          Employer-Employee Relationship................................................................11

        (i)   Conclusory Allegations Without Factual Support That
                the Moving Defendants Were an Employer Require
                Dismissal of the Complaint..............................................................11

        (ii)   No "Party Plaintiff" Has Identified  System, Inc.
                 as His or Her Employer....................................................................16

        (iii)   System, Inc. Is Not a Health Care Provider or an Employer ..........................16

    B.   Plaintiffs' Conclusory Allegations Are Insufficient to Establish That
          Dr. Pardes and Mr. Osten Are "Employers" within the Meaning of
          the FLSA and NYLL ...............................................................................17

    C.   Plaintiffs' Allegation That the Defendants Are an Integrated
          Enterprise Is Insufficient to Establish Liability as to Any  Person or
          Entity That Did Not Employ Plaintiffs ..........................................................23

Conclusion ..............................................................................................................26

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Achtman v. Kirby, McInerney & Squire, LLP,*
  464 F.3d 328 (2d Cir. 2006)..................................................................................................10

*Adams v. US Airways, Inc.,*
  No. 10-1088-PHX-DKD, 2011 WL 644089 (D. Ariz. Feb. 11, 2011) ....................................15

*Alamu v. Bronx-Lebanon Hosp. Ctr., et al.,*
  No. 1:11-cv-OV316 (S.D.N.Y)..............................................................................................22

*Ali v. New York City Health and Hosp. Corp., et al.,*
  No. 1:11-cv-6393 (S.D.N.Y).................................................................................................22

*Allstate Ins. Co. v. Estate of Levesque,*
  No. 8:08-CV-2253-T-33EAJ, 2010 WL 2978037 (M.D. Fla. July 19, 2010) ...........................7

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937 (2009)................................................................................. *passim*

*Atuahene v. City of Hartford,*
  10 F. App'x 33 (2d Cir. 2001) .............................................................................................10

*Barfield v. N.Y.C. Health and Hosp. Corp.,*
  537 F.3d 132 (2d Cir. 2008)...................................................................................11, 12, 25

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................................ *passim*

*Bravo v. Eastpoint Int'l, Inc.,*
  No. 99 Civ. 9474, 2001 WL 314622 (S.D.N.Y. Mar. 30, 2001) .................................17, 19, 22

*Cannon v. Douglas Elliman, LLC,*
  No. 06 Civ. 7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007)......................................12, 25

*Cavallaro v. UMass Mem'l Health Care Inc.,*
  No. 09-40152-FDS, 2011 WL 2295023 (D. Mass. June 8, 2011) ...............................14, 15, 22

*Chen v. Domino's Pizza, LLC,*
  Civ. A. No. 09-107, 2009 WL 3379946 (D.N.J. Oct. 16, 2009)........................................13, 15

*Curto v. Bender,*
  No. 04-CV-26S, 2005 WL 724156 (W.D.N.Y. Mar. 28, 2005), *aff'd,* 231 F. App'x 93
  (2d Cir. 2007)...................................................................................................................10

ii

*Davis v. Abington Mem'l Hosp.*,
   --- F.Supp. 2d ---, 2011 WL 4018106 (E.D. Pa. Sept. 8, 2011)..........................................15, 22

*Diaz v. Consortium for Worker Educ., Inc.*,
   No. 10 Civ. 01848 (LAP), 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010)...............................15

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999)............................................................................................................12

*Hibbs-Rines v. Seagate Techs, LLC*,
   No. C 08-05430 SI, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009) .............................................15

*In re Merck & Co.*,
   Civ. A. Nos. 05-1151, 05-2368, 2006 WL 1228595 (D.N.J. May 5, 2006), *rev'd on
   other grounds sub nom., In re Merck & Co. Secs., Derivatives & ERISA Litig.*, 493 F.
   3d 393 (3d Cir. 2007).......................................................................................................................7

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991)............................................................................................................7

*Leber v. Berkley Vacation Resorts, Inc.*,
   No. 2:08-CV-01752-PMP-PL, 2009 WL 2252517 (D. Nev. July 27, 2009).....................13, 15

*Lepkowski v. Telatron Mktg. Group, Inc.*,
   766 F. Supp. 2d 572 (W.D. Pa. 2011).........................................................................................15

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*,
   No. 04 Civ. 0604, 2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) .............................................7

*Manning v. Boston Medical Center Corp.*,
   No. Civ A. 09-11463-RWZ, 2011 WL 796505 (D. Mass. Feb. 28, 2011) ...............................14

*Megginson v. Westchester Med. Ctr, et al.*,
   No. 1:11-cv-06657 (S.D.N.Y.)....................................................................................................22

*Nakahata v. New York Presbyterian Healthcare System, Inc., et al.*,
   10 Civ. 2661 (PAC) ........................................................................................................................4

*Patel v. Wargo*,
   803 F.2d 632 (11th Cir. 1986) ...............................................................................23, 24, 25

*Quinteros v. Sparkle Cleaning, Inc.*,
   532 F. Supp. 2d 762 (D. Md. 2008)............................................................................................13

*Rogers v. KAR Holdings, Inc.*,
   No. 8:08-cv-602-T-30TGW, 2008 WL 4059767 (M.D. Fla. Aug. 27, 2008)..............23, 24, 25

*Ruston v. Town Bd. for Town of Skaneateles*,
   610 F.3d 55 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 824 (2010).................................................11

iii

*Sampson v. Medisys Health Network Inc., et al.*,
    No. 2:10-cv-01342 (E.D.N.Y.) ..............................................................................................22

*Tracy v. NVR, Inc.*,
    No. 04-cv-6541L, 2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009) ......................19, 20, 21, 22

*Wolman v. Long Island Health Network, Inc.*,
    No. 2:10-CV-01326 (E.D.N.Y.)..............................................................................................22

*Wood v. TriVita, Inc.*
    No. CV-08-0765-PHX-SRB, 2009 WL 2106291 (D. Ariz. June 22, 2009)............................22

**STATUTES**

29 U.S.C. § 203(g) ...........................................................................................................................11

29 U.S.C. § 203(r)............................................................................................................................23

Article 31, New York Mental Hygiene Law.......................................................................................7

New York Labor Law .................................................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2, 9, 10

Fed. R. Civ. P 8(a) .............................................................................................................................9

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.1 (c)(3).......................................................................8

FIRM:17904320v1

## Preliminary Statement

Defendant New York-Presbyterian Healthcare System, Inc. ("System, Inc.") is a not-for-profit corporation that does not have any employees and is prohibited in its corporate charter and by New York State healthcare regulations from operating hospitals or providing healthcare services. Defendants Herbert Pardes and Wayne Osten are senior executives employed by defendant The New York and Presbyterian Hospital ("NYPH" or "Hospital"). (Wayne Osten Affidavit ("Osten Aff."), sworn to on February 15, 2012, ¶ 1; Bart Minsky Affidavit ("Minsky Aff."), sworn to on February 15, 2012, ¶ 12.)

System, Inc., Dr. Pardes and Mr. Osten successfully moved to dismiss the entirety of the complaint in a wage and hour action commenced in 2010 by two of the plaintiffs in this action, and this Court permitted plaintiffs to amend two of the dismissed claims. Plaintiffs appealed that decision, and at the same time commenced this "new" action. In the complaint in this action (the "New Complaint"or "Compl."), the two previous plaintiffs, plus a third, once again attempt to hold System, Inc., Dr. Pardes and Mr. Osten responsible for alleged unpaid wages of more than 52,000 unidentified individuals employed either by the Hospital or one of about two dozen other unnamed entities, and some 500 allegedly component "entities" of those unnamed entities in the tri-State area. In doing so, plaintiffs have simply repleaded the same deficient allegations and have disregarded this Court's admonition that "[i]t should go without saying that the defendant in FLSA and NYLL claims must be the plaintiff's employer."

The New Complaint alleges that Masahiro Nakahata, Diana Gardocki and Cynthia Delancy[1] and the putative class members were not paid for unspecified meal periods and breaks

---

[1] Plaintiff Nakahata was a salaried, professional registered nurse ("RN") employed by NYPH pursuant to the terms of a collective bargaining agreement ("CBA") between the Hospital and the New York State Nurses Association ("NYSNA"). Pursuant to the CBA, Nakahata has been on a leave of absence since June 2007. Gardocki's employment as a salaried RN terminated by the Hospital pursuant to the terms of the CBA in January 2010 when she retired. Plaintiff Delancy joined NYPH in 1998 as a salaried, professional registered nurse, worked as a nurse

through which they allegedly worked and, as a result, were denied "applicable premium pay" and pay at a rate higher than their base salary and overtime in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). They also allege that they were not paid for work prior to and after their shifts and "training" for a couple of hours every year or two, or at other intermittent times.

System, Inc., Dr. Pardes and Mr. Osten (the "Moving Defendants") move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the New Complaint. As in the prior action, the New Complaint should be dismissed because, in contravention of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), it fails to plead substantial and plausible facts establishing an employment relationship between any of the three Moving Defendants and the 52,000 employees working at the 500-plus health care facilities and centers vaguely referred to but not identified in the New Complaint. (*See* ¶¶ 26, 27, 39.) (The Moving Defendants also join the motion of defendant NYPH to dismiss the New Complaint for the reasons stated in NYPH's memorandum of law.)

Although the New Complaint has only four named defendants, it asserts in conclusory fashion that the two corporate and two individual defendants are "jointly and severally liable as joint employers" (¶ 19) for wage "violations occurring at each of their [sic] locations, including [NYPH] as well as their [sic] approximately 250 health care facilities and centers and more than 270 affiliated health care facilities and centers" (¶ 39). The New Complaint fails to set forth, however, any specific facts or details supporting this patently incredible claim, and it should be dismissed.

---

practitioner starting in October 2008, and was discharged for unsatisfactory performance in February 2011. (Minsky Aff., ¶¶ 8-10.)

2

Moreover, exactly as in the prior action, the New Complaint seeks to impose liability on the same two corporate officers based on the implausible conclusion that these two individuals control all aspects of the day-to-day employment activities of the "New York-Presbyterian Healthcare System, Inc." erroneously defined by plaintiffs to encompass hundreds of unidentified facilities that are alleged to employ tens of thousands in three states (Compl., ¶¶ 15, 26, 27). The New Complaint fails to allege any facts supporting this conclusory assertion. In fact, plaintiffs consistently and deliberately utilize the misleading defined term "NYP Healthcare System" - - seemingly to refer interchangeably to either the "New York – Presbyterian Healthcare System" or the separate legal entity System, Inc. - - in an effort to obscure the critical difference between the two.

New York-Presbyterian Healthcare System (the "Healthcare System"), is not an entity, does not employ anyone, and cannot be a party to this action. It is an unincorporated federation of autonomously-operated acute care hospitals, specialty institutes, and continuing care centers in New York, New Jersey and Connecticut. Its members include academic affiliates of Weill Cornell Medical College and Columbia University College of Physicians and Surgeons who collaborate to improve patient care, medical education and research. The Healthcare System offers physicians the opportunity to collaborate on health-related initiatives, offers access to an on-line medical library, and conducts educational programs. NYPH, as well as each of the member institutions that participates in the Healthcare System, is operated as a separate not-for-profit corporation. Neither NYPH nor System, Inc. employs nor supervises the medical staff of the Healthcare System member institutions. (*See* the Healthcare System's website www.nypsystem.org.) By contrast, System, Inc. is a 507(c)(3) supporting organization that has *no* employees. By law, it cannot, and does not, provide any medical care.

3

### The History of the Litigation

The initial complaint was filed in this Court by plaintiff Nakahata alone on March 24, 2010 on behalf of a purported class of 52,000 employees. (*Nakahata v. New York Presbyterian Healthcare System, Inc., et al.*, 10 Civ. 2661 (PAC)). The defendants were System, Inc., NYPH, Dr. Pardes, Solomon Torres, New York-Presbyterian Fund, Inc., and 18 hospitals and healthcare providers in the tri-State area, which participated in the Healthcare System. The first complaint alleged that the 23 named defendants operated or were affiliated with approximately 500 healthcare facilities, which were each listed by name, and whose names filled 10 pages of the initial complaint.

The initial complaint was never served. Instead, plaintiff Gardocki joined Nakahata in an amended complaint filed June 16, 2010. The amended complaint added a half-dozen hospitals as named defendants, replaced Mr. Torres with Mr. Osten, and expanded the list of 500 facilities that were alleged to be operated by or affiliated with the 25 named defendants. The amended complaint did not identify which of the 25 defendants was affiliated with any one of the 500-plus facilities. The number of employees alleged to be "jointly employed" by all of the named defendants at the 500-plus facilities remained at "more than 52,000."

The 25 named defendants' counsel sent a barrage of "Rule 11 letters" to plaintiffs' counsel, who again amended the complaint in October 2010. The second amended complaint ("SAC") eliminated all of the named defendants except System, Inc., NYPH, Dr. Pardes and Mr. Osten, but the allegations remained the same. The SAC alleged that the four named defendants – including the two individuals – owned or were affiliated with the 500-plus healthcare facilities and centers listed in the SAC. The facilities included such diverse entities as: Royal Charter Properties, Inc; Holy Name Hospital Federal Credit Union; New Milford [CT] Visiting Nurse, Inc.; Northern Westchester [NY] Dermatology; Hospital Gift Shop Auxiliary

4

Valley Hospital [NJ]; and the Physicians' Wives Guild of Wyckoff Heights Hospital, Inc. The purported class of employees still numbered "more than 52,000."

In November, 2010, System, Inc., Dr. Pardes and Mr. Osten moved to dismiss the SAC on the ground that: (a) plaintiffs failed to allege any facts showing that any defendant was their employer; (b) plaintiffs' conclusory allegations were insufficient to establish that Dr. Pardes or Mr. Osten were employers within the meaning of the FLSA or NYLL; and (c) plaintiffs' allegations that the defendants were an integrated enterprise was insufficient to establish liability as to any entity that did not employ plaintiffs. In addition, they incorporated the arguments made separately in a motion to dismiss by NYPH.

The Court granted the defendants' two motions, as well as motions made in three other nearly-identical actions against other groups of hospitals, holding *inter alia* that:

> The very generalized allegations [in all of the complaints] contain no facts to support the claims under the FLSA and NYLL; there is no basis for naming all hospitals within a system; *there is no basis for personal liability* . . . .
>
> * * *
>
> The complaints are deficient due to the failure to specify which entity, among the many named defendants, employed the respective plaintiffs. *Certainly if one entity did not pay an employee for overtime, that is an insufficient basis for naming every other health care facility affiliated with the employer.*

(Opinion and Order, 1/28/11 at pp. 7, 9 [Document No. 169], emphasis added.)

The Court did allow plaintiffs to replead their FLSA and NYLL claims against the four defendants, with the admonition that "sufficient facts be alleged to make the claim plausible," and significant for the moving defendants here, they must avoid suing "multiple defendants who are not employers." (*Id.* at 11, 14.)

The New Complaint still fails to allege plausible causes of action against System, Inc., Dr. Pardes and Mr. Osten for the same reasons that doomed the SAC.  The same conclusory allegations are made with regard to each moving defendant as in the SAC, albeit in a different order and with immaterial word changes.[2]  What is more, the New Complaint seeks to hold the four named defendants liable for allegedly unpaid wages of the same purported class of 52,000 individuals referred to in the SAC as working at the 500-plus varied and widely-scattered facilities listed in the three previous iterations of the complaint.  The New Complaint makes this clear, alleging (¶ 26) that the four "[d]efendants," including the two individuals, "maintain 250 health care facilities and centers and more than 270 affiliated health care facilities and centers," and that System, Inc. "employed over 52,000 fulltime employees and operated 24 acute care hospitals." (¶ 27.)  Nothing has changed in this regard except the omission of the 10-page list of facilities.  Plaintiffs are simply asserting the identical claims as in the SAC in an attempt to prove System, Inc., two executives, and NYPH were joint employers of the tens of thousands of employees located at hospitals, clinics and other providers throughout the tri-State area, and clumsily attempt to camouflage this strategy by omitting the 10-page list of more than 500 providers which was in the SAC, and by presenting the allegations in a different order.

### The Allegations

Although comprised of 34 pages and 191 paragraphs, the conclusory allegations of the New Complaint can be briefly summarized.  The gravamen of the New Complaint is that the moving defendants and NYPH allegedly maintained policies or practices which resulted in employees performing work for which they were not compensated.   The New Complaint indiscriminately uses the expression "NYP Healthcare System" to refer collectively to NYPH,

---

[2] *See* the Appendix to this memorandum for a list identifying which paragraphs in the New Complaint merely substantially repeat paragraphs in the SAC.

the Healthcare System, and System, Inc., and "defendants" to refer in blanket fashion to the four

named defendants, irrespective of whether it is referring to what can only be corporate activity.

Like its predecessors, the New Complaint fails to specify which defendant entity employed the

plaintiffs. Rather, plaintiffs vaguely allege that they were employed by all four of the individual

and corporate "defendants" and that they "worked at" one of two NYPH locations in Manhattan.

(Compl., ¶¶ 71, 72, 73.)

### System, Inc.

In contrast to the Healthcare System (which is not an entity at all), System, Inc., is

a "Type B" not-for-profit corporation organized under New York law and is exempt from federal

income taxation.  (Osten Aff., ¶ 2 & Ex. A.) As set forth in System, Inc.'s certificate of

incorporation, it is organized "exclusively for charitable, religious, educational and scientific

purposes."[3] (*Id.*) System, Inc. is expressly <u>not</u> "authorize[d] . . . to establish, operate or maintain

a hospital or to provide hospital services or health-related services . . . as defined in and covered

by Articles 28, 33, 36, 40 and 44, respectively, of the Public Health Law or Article 31 of the

Mental Hygiene Law," and it does not do so.  (*Id.*, Ex. A & ¶ 2.) As a matter of law, System,

Inc. cannot adopt or approve of hospital operating policies and procedures, including personnel

and compensation policies for itself, much less for NYPH or for the several dozen participants in

the Healthcare System, let alone the more than 500 facilities allegedly associated with those

---

[3] This Court may take judicial notice of public documents, such as corporate charters and certificates of incorporation. *See, e.g., Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604, 2004 WL 1781009, at *5 (S.D.N.Y. Aug. 10, 2004) (certificate of registration on file with the New York Secretary of State); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (SEC filings); *Allstate Ins. Co. v. Estate of Levesque*, No. 8:08-CV-2253-T-33EAJ, 2010 WL 2978037 (M.D. Fla. July 19, 2010) (articles of incorporation); *In re Merck & Co.*, Civ. A. Nos. 05-1151, 05-2368, 2006 WL 1228595, at *14 n.6 (D.N.J. May 5, 2006), *rev'd on other grounds sub nom., In re Merck & Co. Secs., Derivatives & ERISA Litig.*, 493 F. 3d 393 (3d Cir. 2007)  ("[T]his Court can take judicial notice of Merck's corporate charter" on a motion to dismiss.) (Citations omitted).

7

participants. N.Y. Comp. Codes R. & Regs., tit. 10, § 405.1(c)(3).[4]  System, Inc. does not have (and never had) any employees. (Osten Aff., ¶ 3.)  All of these facts were presented to plaintiffs on the last motion.

### Dr. Herbert Pardes

Dr. Herbert Pardes was the President and CEO of The New York and Presbyterian Hospital until September of 2011. (Minsky Aff., ¶ 12.)  He currently serves as Executive Vice Chairman of the NYPH Board of Trustees.  (*Id.*)  The New Complaint claims that he is an "employer" based solely on his prior position (Compl., ¶¶ 42-55) and the wholly implausible allegations that he makes "decisions that concern [sic] payroll functions . . . [and] the terms of employment offered across NYP Healthcare System" and "is involved in the creation and/or maintenance of the illegal policies complained of in this case." (*Id.*, ¶¶ 47, 48, 53.)  However, the New Complaint does not contain a single fact identifying any of the employment policies or employment decisions that Dr. Pardes allegedly made and implemented "across" the tri-State agglomeration of more than 500 facilities.  Indeed, the bulk of the allegations pertaining to him have nothing to do with individual liability under the FLSA or NYLL. (*See, e.g.,* Compl., ¶ 43 (recognized as "Dr. New York" for fund-raising); ¶ 49 (serving on unrelated boards that promote "quality, safety and efficiency of health care"); ¶ 50 (blogging).)

### Wayne Osten

Plaintiffs allege that Wayne Osten is the Senior Vice President and Director for New York-Presbyterian Healthcare System (which, as explained above, is not even an entity).

---

[4] The conclusory and generic allegation that the "defendants" share common management and "have common ownership," does not suffice. Plaintiffs must, but do not, identify the individuals who allegedly control the *labor relations* policies of the defendants. (Compl., ¶¶ 20-33.) Moreover, the New Complaint does not (nor could it) identify any person who allegedly shares management of the more than 500 entities, nor does the New Complaint identify these alleged managers' titles or duties. (*Id.*, ¶¶ 26, 27.) In fact, plaintiffs do not in any way indicate the manner in which the alleged shared management of the over 500 "defendants" functions. (*Id.*, ¶¶ 30-31.)

(Compl., ¶ 56.)  He is employed by NYPH.  Based on little more than the fact that he is a non-employee officer of System, Inc., the New Complaint alleges that Mr. Osten is the "employer" of the putative class members. (*Id.*, ¶¶ 56-69.)  There are, however, no specific facts alleged supporting this conclusion.  The New Complaint interchangeably and indiscriminately refers to "New York-Presbyterian Healthcare System" (¶ 56), System, Inc. (¶ 57) and the "NYP Healthcare System" (¶ 66), and concludes that "[i]n concert with others, Mr. Osten has the authority to, and does, make decisions that concern NYP Healthcare System's operations, including functions related to employment, human resources, training and payroll" (*id.,* ¶ 64), and that he "is actively involved  in creating and/or maintaining the illegal policies complained of in this case" (*id.,* ¶ 67).  It does not, however, identify even one specific employment policy that Mr. Osten allegedly "created."  Nor does the New Complaint set forth Mr. Osten's alleged role in creating employment policies "concerning" more than 500 facilities, or the decisions he allegedly made relevant to plaintiffs' and some 52,000 others' wage and hour claims.  As with Dr. Pardes, most of the allegations pertaining to Mr. Osten have nothing to do with individual liability under the FLSA or NYLL. (*See, e.g., Id.* ¶ 58 (fostering quality patient care initiatives); ¶ 61 (developing strategies for "regional, programmatic and health policy matters"); ¶ 63 ("congratulating . . . Health Planning Leadership Award" winners); ¶ 65 (managing "initiatives and . . . determining the priorities and challenges of the system [sic]").)

## Argument

## POINT I

## RULE 12(b)(6) STANDARDS ON A MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) requires that a "complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"

FIRM:17904320v1

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). *See also Twombly*, 550 U.S. at 555. The Supreme Court has held that "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 556 n.3 (citation omitted.) Thus, "[w]hile a complaint . . . does not need detailed factual allegations, . . . 'plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* at 555 (internal quotation marks and citations omitted). Notwithstanding the liberal pleading standards in the Federal Courts, courts in this Circuit have held that vague, conclusory and speculative allegations, such as those that permeate the New Complaint, are subject to dismissal under Rule 12(b)(6). *See, e.g., Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (" '[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.' ") (citation omitted); *Curto v. Bender*, No. 04-CV-26S, 2005 WL 724156, at *1, 12 (W.D.N.Y. Mar. 28, 2005), *aff'd*, 231 F. App'x 93 (2d Cir. 2007) (same).

In *Iqbal*, 129 S. Ct. 1937, the Supreme Court reemphasized the pleading requirements enunciated in *Twombly*, underscoring that: (1) a pleading offering only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8; (2) while Rule 8 does not require detailed factual allegations, it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation . . ."; and (3) a complaint will not survive a motion to dismiss if it contains merely "naked assertions devoid of further factual enhancement." 129 S. Ct. at 1949 (internal quotation marks and citations

omitted).  *See also Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 58-59 (2d Cir. 2010),

*cert. denied,* 131 S. Ct. 824 (2010).

**POINT II**

**PLAINTIFFS FAIL TO ALLEGE ANY FACTS
SHOWING THAT ANY MOVING DEFENDANT
WAS THEIR "EMPLOYER"**

A.     **Plaintiffs' FLSA and NYLL Claims Should Be Dismissed Because Plaintiffs Fail to
       Plead Facts Sufficient to Show the Existence of an Employer-Employee Relationship**

   (i)     **Conclusory Allegations Without Factual Support That the Moving
           Defendants Were an Employer Require Dismissal of the Complaint**

            The New Complaint fails to plead the essential basis on which FLSA and NYLL

claims may lie against System, Inc., Dr. Pardes and Mr. Osten, namely, the existence of an

employer-employee relationship.    Instead, plaintiffs repeat (Compl., ¶ 33) the formulaic

incantation found in the dismissed SAC that the two-entity and two-individual "defendants

constitute an integrated, comprehensive, consolidated health care delivery system."  Echoing the

FLSA, the New Complaint concludes that "defendants suffered or permitted [the class] to

perform work for it at its [sic] various [500+] health care locations."  (Compl., ¶ 34.)  These

blunderbuss allegations continue to ignore *Twombly, Iqbal* and common sense.

            Only a person or entity that is in "reality" an "employer" is an employer within

the meaning of the FLSA or NYLL.  *Barfield v. N.Y.C. Health and Hosp. Corp.,* 537 F.3d 132,

141 (2d Cir. 2008).  An employer "employs" an individual only when it "suffer[s] or permit[s]"

that individual to work for it.  29 U.S.C. § 203(g).  The "determination of whether an employer-

employee relationship exists for purposes of the FLSA [or NYLL] should be grounded in

'economic reality.' " *Barfield,* 537 F.3d at 141 (citations omitted).  It is determined by the facts,

not conclusions.    This "economic reality" test examines whether a defendant has actual control

over the employment of an individual such that an employer-employee relationship exists.

11

Courts consider whether a putative defendant (1) has the power to hire and fire the employee, (2) supervises and controls the employee's work schedules or conditions of employment, (3) determines the rate and method of payment, and (4) maintains the employee's employment records. *Id.* at 142 (citations omitted). No single factor is determinative.[5]   *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Although the New Complaint unsuccessfully attempts to cure the glaring defects in the SAC with regard to the hours plaintiffs worked and what they did, it does not come close to the specificity required to hold the moving defendants liable for anyone's wages. Rather, the New Complaint recites what the "regulations" provide (¶ 20) and what "courts look to" (¶ 21), but merely states conclusions instead of facts setting forth what the "economic realities" are. For example, it simply asserts that the "NYP Healthcare System" is a "single, integrated enterprise." (¶ 23.) Defendant System, Inc. is alleged, without details, to be "controlled and operated through centralized management," which is not described except as "includ[ing]" the two individual defendants. (¶ 30.)   Again irrationally combining entities and individuals, the New Complaint alleges that the four "defendants" have "centralized supply chain management" and "integrated" systems "throughout their [sic] locations." (¶ 31.)   None of these conclusions even makes sense when applied to the two individual defendants.

Although the New Complaint addresses System, Inc. in a handful of paragraphs mentioning its newsletter (¶ 28) and its tax exempt status 990 forms (¶ 29), it fails to link System, Inc. to these plaintiffs. Plaintiffs do not, nor can they, allege who at System, Inc. hired or could fire them. There are no allegations as to who at System, Inc. supervised or controlled their work schedules or conditions of employment. Their descriptions of what they do as nurses

---

[5] Because the NYLL applies the same standards of "employer" as the FLSA, the plaintiffs' NYLL claims must be dismissed as well. *See, e.g., Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007).

(¶ 71, ¶ 72 and ¶ 73) indicate that they are employed by a healthcare provider, which System, Inc. is not, and cannot be by reason of its own charter. Simply declaring that System, Inc. is their employer is facially implausible and legally insufficient. *See, e.g., Chen v. Domino's Pizza, LLC*, Civ. A. No. 09-107, 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009) (mere allegation that defendants were employers not sufficient to show employment relationship); *Leber v. Berkley Vacation Resorts, Inc.*, No. 2:08-CV-01752-PMP-PL, 2009 WL 2252517, at *5 (D. Nev. July 27, 2009) (dismissing plaintiffs' FLSA claim for failure to allege which defendant was their employer); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 775-76 (D. Md. 2008) (granting defendant Regal's motion to dismiss where the economic reality regarding the plaintiffs and Regal was insufficient to find an employer-employee relationship).

The New Complaint also contains an allegation (¶ 36) that "defendants" are liable "under a theory [sic] of joint venture." A joint venture, however, is not a "theory" but a for-profit business relationship created by a specific agreement to pool resources and management and to share profits and losses. Nothing in the New Complaint comes close to pleading such an economic relationship; rather, it contains the contradictory allegations that the "NYP Healthcare System" is a tax-exempt *not-for-profit* "system." (¶¶ 25, 29.) Much like the allegations here, the plaintiffs in *Leber* alleged in conclusory fashion that the defendants were " 'a common or joint enterprise or partnership that is collectively, jointly and severally liable to all of the putative plaintiffs.' " 2009 WL 2252517, at *5 (citation omitted). Citing *Twombly* and *Iqbal*, the court rejected this assertion because:

> [t]he Complaint's only factual allegations are that Defendants all are engaged in the sale of timeshare interests and have similar compensation practices for their salespersons. . . . Taking such allegations as true, they do not state a plausible entitlement to relief against any Defendant as any Plaintiff's employer or joint employer. Plaintiffs have not alleged which Defendant is their employer or any facts supporting joint employment by any of the

13

> other Defendants.  The fact that all Defendants conduct business in
> the same industry and utilize similar compensation schemes is
> insufficient to establish joint employer status.

Plaintiffs have failed to allege any concrete facts establishing that there is (or ever was) an

employment relationship between them and System, Inc.  Plaintiffs are required to go beyond

boilerplate conclusions and plead facts supporting their allegations.  Where a plaintiff fails to do

so, courts have not hesitated to dismiss the complaint.  For example, in *Manning v. Boston*

*Medical Center Corp.*, No. Civ A. 09-11463-RWZ, 2011 WL 796505 (D. Mass. Feb. 28, 2011)

another case brought by plaintiffs' counsel here, the court dismissed virtually identical

allegations stating:

> Plaintiffs' complaint runs to 25 pages and 158 paragraphs, yet it
> lacks even the most basic information about their claims.  Their
> names appear in the caption, the introductory paragraph, and a
> paragraph titled "Named Plaintiffs" which says only that they were
> employees under the FLSA who reside and were employed within
> the district (Compl. ¶ 75).  Which defendant did they work for?
> The Complaint includes the vague allegation that the 20 defendants
> "are the employer (single, joint or otherwise) of the Plaintiffs and
> Class Members and/or alter egos of each other" (*id.* at ¶ 25), which
> is no answer at all.

*Id.* at *1.

> *Cavallaro v. UMass Mem'l Health Care Inc.*, No. 09-40152-FDS, 2011 WL

2295023 (D. Mass. June 8, 2011) is likewise squarely on point with this case  in that it construed

a nearly identical complaint filed by plaintiffs' counsel against another hospital system.  The

court found, *inter alia*, that plaintiffs had "not alleged that any of the corporate entities make

decisions regarding their compensation or method of employment.  And they have not alleged

that their employment records are maintained by any of the defendants." *Cavallaro*, 2011 WL

2295023, at *4.  Accordingly, the court held that "[i]n light of their failure to allege any specific

facts in support of a theory of joint employment, there is no plausible basis for an inference that

all of the defendants caused the alleged FLSA violations that plaintiffs suffered." *Id.* at \*14. *See also Davis v. Abington Mem'l Hosp.*, --- F.Supp. 2d ---, 2011 WL 4018106, at \*3 (E.D. Pa. Sept. 8, 2011) (in referring to another complaint filed by the same plaintiffs' counsel the court cannot "embark on a joint-employer analysis" in the absence of "facts alleging who exercised primary control over Defendants" where plaintiffs "never allege for which of the 86 entities they actually worked or the nature of the relationship between those entities"); *Chen*, 2009 WL 3379946, at \*5 (complaint dismissed where plaintiffs made conclusory allegation that defendants were joint employers); *Hibbs-Rines v. Seagate Techs, LLC*, No. C 08-05430 SI, 2009 WL 513496, at \*5 (N.D. Cal. Mar. 2, 2009) ("Plaintiff's joint employer allegations are insufficient because they are legal conclusions, not factual allegations. . . . While plaintiff is not required to conclusively establish that defendants were her joint employers at the pleading stage, plaintiff must at least allege *some* facts in support of this legal conclusion.") (citations omitted); *Leber*, 2009 WL 2252517, at \*5 ("Plaintiffs have alleged Defendants are 'a common or joint enterprise or partnership that is collectively, jointly and severally liable to all of the putative plaintiffs described herein'. . . . This allegation is conclusory and supported by no factual allegations.") Since plaintiffs have, like the plaintiffs in *Hibbs-Rines*, *Leber* and *Chen*, made nothing other than conclusory allegations, the New Complaint should be dismissed as against System, Inc.[6]

---

[6] *See also Diaz v. Consortium for Worker Educ., Inc.*, No. 10 Civ. 01848 (LAP), 2010 WL 3910280, at \*4 (S.D.N.Y. Sept. 28, 2010) (citations omitted) (dismissing FLSA claims against one defendant because the "complaint contains no facts that indicate that [defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their work hours, or maintaining employment records"); *Adams v. US Airways, Inc.*, No. 10-1088-PHX-DKD, 2011 WL 644089, at \*3 (D. Ariz. Feb. 11, 2011) (dismissing FLSA claims against one defendant where plaintiffs failed to "address whether [defendant] had the power to hire and fire the employees, whether they supervised and controlled employee work schedules or conditions of employment or maintained employment records"); *Lepkowski v. Telatron Mktg. Group, Inc.*, 766 F. Supp. 2d 572, 578-584 (W.D. Pa. 2011) (same).

(ii)     **No "Party Plaintiff" Has Identified**
         **System, Inc. as His or Her Employer**

The allegations in the New Complaint that System, Inc. employed the named plaintiffs and other members of the putative class is further belied by the fact that not one of the approximately 130 "party plaintiffs" who seek to become part of this action has specifically identified any particular "defendant" as that person's employer. Rather, the "Consent to Become a Party Plaintiff" form states nothing more than: "I am/was employed by New York Presbyterian Healthcare System." This, however, is meaningless given that (1) The "New York Presbyterian Healthcare System" is not a legal entity and is not a party to this action; (2) System, Inc. in fact has no employees; and (3) there is no indication that any person signing these forms is either "similarly situated" to the named plaintiffs, or reviewed any version of the New Complaint and understood the scope of what they were claiming. Thus, even the "Consent to Become a Party Plaintiff" forms do not provide any factual support for Plaintiffs' conclusory allegations that they were employed by System, Inc., and are the identical "check-the-box" forms used in the prior action.

(iii)    **System, Inc. Is Not a Health Care Provider or an Employer**

The New Complaint should also be dismissed because System, Inc. is not a hospital and does not provide health care. According to its charter, and as a matter of law, System, Inc. cannot be a hospital. It does not operate "health care facilities and centers," or "affiliated health care facilities and centers," let alone more than 500 of them. (Compl., ¶ 26.) Nor is it "engaged in the operation of hospitals and/or the care of the sick," *nor can it be. (Id., ¶* 17.) Nor does System, Inc. control the terms and conditions of employment of some 52,000 employees who allegedly work at the more than 500 "health care facilities and centers" referred to in the New Complaint.    (*Id.,* ¶¶ 26, 27.)   Even though System, Inc. had submitted sworn

16

evidence and admissible documentary proof of the foregoing in the first action, the New Complaint persists in failing to allege any facts to the contrary, let alone "plausible" or sensible ones.

The New Complaint's allegations that System, Inc. employed the three named plaintiffs or any of the other putative class members are even more implausible when plaintiffs' specific employment circumstances are examined.   Plaintiffs were employed by NYPH as professional salaried registered nurses or nurse practitioners. (Minsky Aff., ¶¶ 8-10.)  Given that System, Inc. is not a hospital and does not provide healthcare services, and is not permitted to do so as stated above, these individuals *could not have had* any employment relationship with it.

Moreover, as shown by its charter, System, Inc. is a "Type B" *not-for-profit* corporation.  (Osten Aff., ¶ 2 & Ex. A.)  As such, it is not "owned" by anyone, does not generate "profits" from the operation of medical facilities, nor does it engage in a "joint venture . . . established through. . .[its] conduct in sharing the profits and losses." (Compl., ¶¶ 32, 36.)

Simply put, the New Complaint has not cured the defects in the SAC and should meet the same fate.

**B.**     **Plaintiffs' Conclusory Allegations Are Insufficient to Establish That Dr. Pardes and Mr. Osten Are "Employers" within the Meaning of the FLSA and NYLL**

Individual officers of substantial corporations are not deemed employers of that corporation's employees under the FLSA pursuant to the Second Circuit's economic reality test. *Herman*, 172 F.3d at 139.   Bare allegations based solely on an individual's job title and presumed duties are insufficient to make a claim that an individual is an "employer." *Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001).  Even more factual substantiation is required to deem an executive the "employer" of more than 52,000

17

individuals at 500+ facilities with employees spread over three states, as the New Complaint here alleges. The New Complaint is devoid of any such facts.

Plaintiffs' broad-brush allegations against Dr. Pardes and Mr. Osten are clearly deficient. Regarding Dr. Pardes, the New Complaint makes numerous irrelevant allegations regarding his fundraising activities (Compl., ¶ 43), his activities promoting quality of care (*id.*, ¶ 49), his public statements regarding health care legislation reform (*id.*, ¶ 50) and how he "intends to save money" regarding hiring. (*Id.*, ¶ 45.) The New Complaint then leaps to the conclusion that Dr. Pardes "is involved in the creation . . . of the illegal policies complained of in this case." (*Id.*, ¶ 53.)

The New Complaint is devoid of a single fact to support the fantasy that the former President and CEO of NYPH played any role in the actual "implementation" of the employment policies at the 520 "facilities and centers" the four "defendants" supposedly maintain, let alone NYPH. (Compl., ¶ 52.) There are no facts alleged to support the claim that as the former Chief Executive Officer, Dr. Pardes was "involved in the creation . . . of the illegal [employment] policies complained of in this case" (*id.*, ¶ 53), or that he "hire[s] or fire[s] employees" at NYPH much less anywhere else (*id.*, ¶ 51), or that he "has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, and payroll." (*Id.*, ¶ 45.) The New Complaint does not allege that Dr. Pardes, in fact, hired or fired any plaintiffs, nor does it name a single employee Dr. Pardes allegedly hired, fired or underpaid out of the more than 52,000 employees claimed to be part of the class. (*See* Compl., ¶¶ 41-55.) At best, these conclusory allegations, if true, could make Dr. Pardes out to be a very busy man, but not an employer under the FLSA or NYLL. *Iqbal*, 129 S. Ct. at 1949.

18

The New Complaint's allegations regarding Mr. Osten are equally specious. They merely allege that "[i]n concert with [unnamed] others, Mr. Osten has the authority to, and does, make decisions that concern NYP Healthcare System's operations, including functions related to employment, human resources, training, and payroll." (Compl., ¶ 64.)  This fails to state a claim as a matter of law.  The allegation that Mr. Osten "is actively involved in creating and/or maintaining the illegal [employment] policies complained of in this case" (*id.*, ¶ 67) does not cure the legal deficiency of the New Complaint.  Plaintiffs do not identify the specific employment policies nor do they elaborate on Mr. Osten's alleged role in creating these policies. Indeed, the bulk of the allegations pertaining to Mr. Osten are irrelevant and have nothing to do with liability under the FLSA or NYLL.

As with System, Inc., the allegations that Dr. Pardes and Mr. Osten, are each individually "jointly and severally liable for the wages" of every employee of the over 500 facilities, are implausible.  In fact, the size of plaintiffs' vast, artificially-constructed healthcare empire over which they claim Dr. Pardes and Mr. Osten rule requires *more*, not fewer, factual allegations in order to plead a plausible claim.  "Where the relationship between the putative employer [*i.e.*, the natural person defendant] and the plaintiff employee is more attenuated and the size of the corporation larger, employer liability may not be found." *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) (citation omitted). *See also Bravo*, 2001 WL 314622, at *2 (dismissing complaint against Donna Karan individually because plaintiffs did not allege any facts establishing "her power to control the plaintiff workers"); *Herman*, 172 F.3d at 139.

Individual officers or directors of the corporation may only be "deemed employers under the FLSA where the individual has overall *operational control* of … the employees' salaries and makes hiring decisions." *Tracy*, 2009 WL 3153150, at *4 (internal

19

quotation marks and citations omitted).[7]   Significantly, "bare allegations of an individual's control over employee-plaintiffs that are based solely upon the individual's job title and presumed duties are insufficient to establish that the individual is an 'employer' under [*Herman* 172 F.3d 132]'s economic reality test." *Tracy*, 667 F. Supp. 2d at 247 (citation omitted).

The decision in *Tracy* is instructive.  There, the plaintiffs sought leave to amend their complaint, adding the defendant company's: (1) Chairman of the Board; (2) CEO; and (3) Vice President of Human Relations.  *Tracy*, 2009 WL 3153150, at *5-6.  Particularly, the plaintiffs alleged that the Chairman and the CEO:

> each (1) must have been "involved in the creation and/or maintenance of the illegal policy complained of in this case"; must have "actively advise[d] defendants' agents on the enforcement of the illegal policies"; and must have "actively ensure[d] defendants' compliance or non-compliance with . . . the FLSA"; . . . and (2) must have had the authority to make human resources policy decisions, to make decisions concerning recordkeeping, to make decisions concerning training and education "across NVR" and to make decisions concerning "payroll functions". . . .

*Id.* at *5.  As it related to the Vice President of Human Relations, the plaintiffs alleged that he "made decisions concerning employees' schedules, hours and standard benefit levels." *Id.* at *6 (citation omitted).

The Magistrate Judge denied the motion to amend with respect to both the Chairman of the Board and the CEO.  *Id.*  The court held that the plaintiffs failed to allege any facts to support the assertion that the Chairman and CEO "ever hired, fired or supervised 'the workers in question.' "  *Id.* at *5 (citation omitted).  Rather, the court held that the sole factual support for the plaintiffs' allegations was the mere fact that the proposed defendants held the

---

[7] *Tracy* involved another action filed by Plaintiffs' counsel here, alleging wage and hour violations against a home mortgage employer.

positions of Chairman and CEO, respectively.   The court found such allegations wholly
inadequate:

> In other words, upon careful analysis, the complaint asserts little
> more than because Schar was Chairman and Saville was President
> of NVR, then each must have had authority to take the actions that
> comprise the "economic realities" test, and that because each had
> the authority to take those actions, then each must have in fact
> taken those actions. *To accept the adequacy of these allegations*
> *would license suit under the FLSA against every high level officer*
> *and board member of large public companies simply because of*
> *the position the individual holds.*   Although the definition of
> employer under the FLSA is indeed broad, I do not believe that it
> is this broad or unbounded by the requirements recently enunciated
> in *Iqbal* and *Twombly*.

*Id*. at *5 (emphasis added).   On appeal, the District Court affirmed the Magistrate Judge, holding

that "amendment of the complaint to add NVR's Chairman of the Board and Chief Executive

Officer would be futile, because NVR has failed to allege sufficient operational control or

involvement in the relevant corporate policies by either one to withstand a motion to dismiss for

failure to state a claim." *Tracy*, 667 F. Supp. 2d at 246.

The court then went one step further and *declined* to accept the Magistrate

Judge's recommendation permitting the plaintiffs to add the Vice President of Human Relations

as an "employer." *Id*.   The court held that plaintiffs' allegation that the Vice President of Human

Relations "had the general authority to hire and/or fire employees, and that he maintained

employee records" wholly insufficient to state a claim. *Id*. at 247.   The District Judge found fault

with the plaintiffs' failure to allege that the Vice President of Human Relations hired any of

them, nor did they provide any evidence that the Vice President of Human Relations exercised

control over their work schedules, conditions of employment, and compensation:

> [M]ere boilerplate allegations that an individual meets the various
> prongs of the economic reality test stated solely upon information
> and belief and without any supporting details - essentially "a
> formulaic recitation of the elements of a cause of action" - are

21

> insufficient to raise plaintiffs' right to relief "above a speculative
> level" with respect to that individual's liability as an employer
> under the FLSA.

*Id.* (citation omitted). *See also Bravo*, 2001 WL 314622, at *2 (dismissing complaint against

individual because plaintiffs alleged no facts establishing power to control the plaintiffs); *Wood*

*v. TriVita, Inc.* No. CV-08-0765-PHX-SRB, 2009 WL 2106291, at *3-4 (D. Ariz. June 22, 2009)

(denying plaintiff's motion to join individual defendants because the proposed allegations were

"insufficient to show that the additional defendants were joint employers for purposes of the

FLSA.")[8]

       As the court held in *Tracy*, plaintiffs' boilerplate allegations simply fail to pass

muster under *Iqbal* and *Twombly*. *Tracy*, 667 F. Supp. 2d at 247. *See also Davis*, 2011 WL

2295023, at *4 n. 48 (quoting *Cavallaro*, 2011 WL 2295023, at *6) ("[b]ecause Plaintiffs have

failed to sufficiently allege facts plausibly demonstrating an employee-employer relationship,

they have also failed to plausibly allege connection to the individual defendants. 'Without more

specific factual allegations connecting the entity that employed plaintiffs to the entity for which

the officers made employee compensation decisions,' Plaintiffs cannot establish that either Barry

Freedom or Lynne Kornblatt was their employer under the FLSA.") They are nothing more than

"a formulaic recitation of the elements of a cause of action" and are insufficient to raise

---

[8] The formulaic nature of plaintiffs' allegations against Dr. Pardes and Mr. Osten is further demonstrated by comparing those allegations with the allegations plaintiffs' counsel have directed at corporate officers in at least five other cases they have pending against New York Metropolitan area healthcare systems. The amended complaints or similar "new" complaints in those other cases invariably name as defendants an executive officer and/or a human resources officer of a defendant healthcare system. In each of those cases, the complaints relating to the authority and functions of the executive officer and/or human resources officer are similar, if not identical in some cases, to the allegations here pertaining to Dr. Pardes and Mr. Osten. *See Megginson v. Westchester Med. Ctr, et al.*, No. 1:11-cv-06657 (S.D.N.Y.), Compl., ¶¶ 43-76; *Alamu v. Bronx-Lebanon Hosp. Ctr., et al.*, No. 1:11-cv-06366 (S.D.N.Y), Compl., ¶¶ 40-89; *Ali v. New York City Health and Hosp. Corp., et al.*, No. 1:11-cv-6393 (S.D.N.Y.), Compl., ¶¶ 33-51; *Wolman v. Long Island Health Network, Inc.*, No. 2:10-CV-01326 (E.D.N.Y.), Fourth Am. Compl., docket no. 183, ¶¶ 45-54; and *Sampson v. Medisys Health Network Inc., et al.*, No. 2:10-cv-01342 (E.D.N.Y.), Second Am. Compl., docket no. 125, ¶¶ 38-62. The continued mass-produced nature of these new or amended pleadings, none of which provides the requisite detail, is precisely the insufficient "formulaic recitation" of the elements of a claim that was condemned in *Twombly*. (*See Twombly*, 550 U.S. at 555).

plaintiffs' right to relief "above the speculative level" with respect to that individual's liability as an employer under the FLSA. *Twombly*, 550 U.S. at 555 (citations omitted.) Dr. Pardes and Mr. Osten should be dismissed from the action.

**C.     Plaintiffs' Allegation That the Defendants Are an Integrated
Enterprise Is Insufficient to Establish Liability as to Any
Person or Entity That Did Not Employ Plaintiffs**

Plaintiffs try to avoid their fatal pleading deficiency by alleging that the various defendants are "joint employers" (Compl., ¶ 19) merely due to their participation in the New York-Presbyterian Healthcare System, which plaintiffs style in typical conclusory fashion as an "integrated enterprise" and/or "joint venture." (Compl., ¶¶ 23; 36.) Not only is this not sufficient under the pleading standards, but courts have rejected the theory that entities comprising an "enterprise" that gives rise to FLSA coverage, should be jointly and severally liable to pay wages of another entity's employees solely because they are members of the "enterprise." *See Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986); *Rogers v. KAR Holdings, Inc.*, No. 8:08-cv-602-T-30TGW, 2008 WL 4059767, at *3 (M.D. Fla. Aug. 27, 2008). Plaintiffs simply misapprehend the concept of enterprise coverage, which relates to whether the FLSA even applies, in the first instance, to a particular employer-employee relationship, including an "enterprise" as defined in 29 U.S.C. § 203(r).

In *Patel*, the plaintiff was employed by one defendant, but argued that another defendant was jointly liable for the FLSA violations committed by the plaintiff's employer because, *inter alia*, both were part of the same section 203(r) "enterprise." The court rejected the plaintiff's "enterprise theory" of liability, stating that "[t]here is no case holding that the individual entities which make up an enterprise should be jointly and severally liable for another entity's employees solely because they are members of the enterprise." *Patel*, 803 F.2d at 635.

23

The analysis of liability as an employer under the FLSA, the court concluded, is different than the analysis of the existence of an enterprise under the FLSA. *Id.*

First, the court noted that the FLSA "premises liability on an employer-employee relationship." *Id.* "Thus, the obligation is on each employer to pay 'each of *his* employees.' . . . There is no suggestion in the language of the statute that an employer is responsible to other employers' employees, unless of course there is a joint employer relationship." *Id.* at 635-36 (citation omitted). Second, the court analyzed the definition of an enterprise and noted that the criteria for establishing an enterprise [for coverage purposes] are much broader than those for establishing liability to pay wages. *Id.* at 636. The court found that Congress' sole purpose in including the enterprise analysis in the FLSA was to expand the scope of the statute's coverage in order to afford more people the benefits of the statute, not to make employers liable for the employees of a separate entity in the enterprise: "The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship." *Id.* at 637. The *Patel* court concluded:

> [t]he wisdom of our conclusion is apparent when it is realized that a small snack bar is part of an enterprise which also includes a large bus terminal as a separate entity, . . . and that a small leased department is part of an enterprise which also includes as a separate entity a large department store. . . . If Patel's theory were correct, the small snack bar or the small leased department would be liable to the many employees of the large bus terminal or the large department store enterprise notwithstanding the fact that the small snack bar or leased department was under entirely separate ownership from the larger entities in the enterprise.

*Id.* at 636-37. The wisdom of that conclusion is immediately apparent here. To find that each of the four "defendants" are all one employer for employees at more than 500 unidentified "facilities and centers" would impose liability on one entity for another entity's employees Following the holding in *Patel*, the court in *Rogers* likewise concluded that:

> Plaintiffs' Complaint lacks any allegations that either KAR or IAAI employed Plaintiffs, either expressly or as a matter of economic reality. As held in *Patel*, the fact that KAR and IAAI may have comprised an enterprise for FLSA purposes does not make them liable for any failure on the part of ADESA to appropriately compensate its employees. Absent any allegations that an employer-employee relationship existed between KAR or IAAI and a Representative Plaintiff, the Court concludes Defendants Motions [to dismiss] should be granted.

*Rogers,* 2008 WL 4059767, at *3. *See also Cornell v. CF Ctr., LLC*, 410 F. App'x. 265, 267 (11th Cir. 2011) ("The enterprise and liability analyses are distinct. 'The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship.' ") (citation omitted); *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *4 n.3 (S.D.N.Y. Dec. 10, 2007) (dismissing defendants in wage-hour action where complaint failed to sufficiently allege joint employer status: "pleading a joint venture does not trigger joint employer status because it is possible for joint venturers to separately employ different people").

Following *Cornell*, *Patel*, *Rogers* and *Cannon*, even if plaintiffs had adequately alleged that the so-called defendants constitute an enterprise (which they do not), plaintiffs still must factually allege the existence of an employer-employee relationship with each member of the alleged "integrated enterprise" or "joint venture" under *Barfield* and *Herman* in order for each of them to be liable to plaintiffs. Plaintiffs have simply failed to do so, with regard to System, Inc., Dr. Pardes or Mr. Osten, as demonstrated above.

25

## **Conclusion**

For the foregoing reasons, Defendants New York-Presbyterian Healthcare System, Inc., Herbert Pardes and Wayne Osten respectfully request that the Complaint be dismissed as against them, without leave to amend and *with prejudice*.

New York, New York
February 21, 2012

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Kenneth J. Kelly
     Kenneth J. Kelly
     James S. Frank
     Kenneth W. DiGia
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500

WILLKIE FARR & GALLAGHER

By: /s/ Terence K. McLaughlin
     Terence K. McLaughlin

787 Seventh Avenue
New York, NY 10019
(212) 728-8000

Attorneys for Defendants New York-Presbyterian
Healthcare System, Inc., Herbert Pardes and Wayne Osten

26

# APPENDIX

| Allegations in complaint filed September 22, 2011 11 CIV 6658 | Allegations in complaint filed October 22, 2010 10-cv-2661 |
|---|---|
| ¶ 5 | ¶ 5 |
| ¶ 6 | ¶ 6 |
| ¶ 7 | ¶ 8 |
| ¶ 8 | ¶ 10 |
| ¶ 9 | ¶ 12 |
| ¶ 10 | ¶ 13 |
| ¶ 11 | ¶ 14 |
| ¶ 12 | ¶ 15 |
| ¶ 13 | ¶ 16 |
| ¶ 14 | ¶ 17 |
| ¶ 15 | ¶ 18 |
| ¶ 17 | ¶ 22 |
| ¶ 27 | ¶ 27 |
| ¶ 28 | ¶ 26 |
| ¶ 31 | ¶ 29 |
| ¶ 32 | ¶ 31 |
| ¶ 33 | ¶ 28 |
| ¶ 34 | ¶ 32 |
| ¶ 36 | ¶ 38 |
| ¶ 42 | ¶ 41 |
| ¶ 43 | ¶¶ 42 and 43 |
| ¶ 45 | ¶ 49 |
| ¶ 49 | ¶ 44 |
| ¶ 50 | ¶ 45 |
| ¶ 51 | ¶ 48 |
| ¶ 52 | ¶ 46 |
| ¶ 53 | ¶ 47 |
| ¶ 54 | ¶ 50 |
| ¶ 56 | ¶ 51 |
| ¶ 57 | ¶ 52 |
| ¶ 58 | ¶ 52 |
| ¶ 59 | ¶ 53 |
| ¶ 60 | ¶ 54 |
| ¶ 61 | ¶ 55 |
| ¶ 62 | ¶ 56 |
| ¶ 63 | ¶ 58 |
| ¶ 64 | ¶ 59 |
| ¶ 67 | ¶ 60 |
| ¶ 68 | ¶ 61 |
| ¶ 74 | ¶ 63 |