UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASAHIRO NAKAHATA, et al.
*on behalf of themselves and all other employees similarly situated*,

Plaintiffs,

- v -

NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., et al.

Defendants.

Civil Action No.
11 cv 6658 (PAC)

PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT THE NEW YORK AND
PRESBYTERIAN HOSPITAL'S MOTION TO DISMISS THE COMPLAINT

THOMAS & SOLOMON LLP
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540

Of Counsel:   J. Nelson Thomas, Esq.
              Michael J. Lingle, Esq.
              Annette M. Gifford, Esq.
              Jessica L. Witenko, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...............................................................................1

FACTUAL BACKGROUND ................................................................................2

LEGAL STANDARD ..........................................................................................3

MOTIONS TO DISMISS ARE RARELY GRANTED ...............................................3

ARGUMENT .....................................................................................................4

I. THE COMPLAINT SUFFICIENTLY PLEADS CLAIMS PURSUANT TO BOTH THE FLSA AND THE NYLL ..............................................................................4

II. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED OR PRECLUDED BY LMRA...............8

   A. Courts Have Expressly Held that NYLL and FLSA Claims are not Preempted by CBAs ...........................................................................................13

   B. Plaintiffs' Claims are not Barred by Failure to Use a Grievance Procedure or to Exhaust Administrative Remedies ...........................................................15

III. DEFENDANTS' REMAINING ARGUMENTS ARE PREMATURE AND IMPORPOERLY ADDRESS ISSUES OF MERITS OR CLASS CERTIFICATION ..........17

   A. Defendants' Argument That the Alleged Policies are "Lawful" is Not a Proper Ground for Dismissal and is Incorrect ...............................................................18

   B. Defendants' Argument That Plaintiffs Lack Standing is Not a Proper Ground for Dismissal and is Incorrect ...............................................................22

   C. Defendants' Argument That Nakahata's FLSA Claims are Time Barred is Not a Proper Ground for Dismissal and is Incorrect................................................24

CONCLUSION...............................................................................................25

## PRELIMINARY STATEMENT[1]

The instant complaint (the "Complaint") adequately alleges that defendants denied employees proper compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Defendants' motion to dismiss must be denied.

The Complaint sets forth sufficient factual allegations to establish plausible claims under the FLSA and NYLL.  As defendants admit, the Complaint provides the additional information required in this Court's previous order. Taken as a whole, the Complaint alleges more than sufficient detail to plausibly assert plaintiffs' claims and to put defendants on ample notice of the allegations they face in this litigation.

Defendants' contention that plaintiffs' claims are preempted by the Labor-Management Relations Act ("LMRA") must also fail because none of plaintiffs' claims require interpretation of any collective bargaining agreement ("CBA").  Simply put, plaintiffs do not assert any claim arising from or contingent upon the CBAs.  Instead, plaintiffs seek solely to assert their rights under federal and state statutes.  The parties' rights and obligations under those statutes are matters of law wholly independent of any CBA; indeed, to hold otherwise would essentially permit defendants to contract away their legal obligations to comply with the FLSA or NYLL.  Plaintiffs' claims will rise or fall pursuant to the requirements of those statutes, and thus no interpretation of the CBAs is required.

Defendants' remaining arguments raise issues regarding the merits of plaintiffs' claims and class allegations, none of which may properly be resolved on a motion to dismiss.

---

[1] To the extent that defendants join in the arguments raised in the motions to dismiss filed in *Alamu v. Bronx-Lebanon Hospital Ctr.,* No. 11-cv-6366 (S.D.N.Y.) or *Megginson v. Westchester Med. Ctr.,* No. 11-cv-6657 (S.D.N.Y.), plaintiffs hereby incorporate by reference the responses to those arguments set out in the memoranda of law attached as Exhibits A and B to the affirmation of Jessica L. Witenko ("Witenko Aff."), sworn to April 16, 2012.

Thus, defendants' motion to dismiss should be denied in full.

## FACTUAL BACKGROUND

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc,* Civil Action No. 10-cv-2661, ("*Nakahata I*") was commenced on March 24, 2010, alleging various claims arising out of plaintiffs' employment.  In dismissing that action[2] the Court directed that, in the event the FLSA and NYLL claims dismissed without prejudice were reasserted in a new action, any subsequent complaint must set forth additional information providing details regarding plaintiffs' employment, estimates of the number of regular and overtime hours allegedly worked without compensation, and the nature of the work performed.  *See Nakahata v. New York Presbyterian Healthcare Sys., Inc.,* No. 10 civ. 2661, 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011) ("Dismissal Order").

The named plaintiffs subsequently brought the instant action, alleging violations of the FLSA and NYLL only, in a Complaint which provides the additional information and detail required by the Dismissal Order.  Plaintiffs here allege violations resulting from illegal pay policies, including a "Meal and Break Deduction Policy" (*see* Docket No. 1, Complaint ("Compl.") ¶¶ 81-113); "Unpaid Pre- and Post-Schedule Work Policy") (*see id.* ¶¶ 114-41); and "Unpaid Training Policy" (*see id.* ¶¶ 142-58).  Plaintiffs assert that defendants violated the FLSA and/or NYLL by failing to properly compensate plaintiffs for all hours worked.

Plaintiffs further allege that defendants knew that employees preformed work pursuant to the unpaid work policies, yet despite benefiting from that work defendants failed

---

[2] Plaintiffs were not given leave to replead in the *Nakahata I* matter because their claims were dismissed and the matter was closed.   Thus, defendants' argument to the contrary is unavailing, as defendants well know because the Second Circuit Court of Appeals has already rejected that argument. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* Civ. No. 11-734 (2d. Cir. 2011), Docket No. 60 (Witenko Aff. Exhibit C).

to ensure that employees were compensated for all hours worked.  *See e.g. id.* ¶¶ 86-88. Further, defendants deliberately misrepresented to plaintiffs that they were being properly paid for time worked, even though they were not receiving proper pay, including overtime compensation.  *Id.* ¶¶ 161-66.  Plaintiffs allege that a class of defendants' current and former employees also suffered these same violations and, thus, that class or collective treatment of these claims is appropriate.  *Id.* ¶¶ 81-158.

## LEGAL STANDARD

### MOTIONS TO DISMISS ARE RARELY GRANTED[3]

A complaint is sufficient where it contains enough facts to state a claim to relief that is plausible on its face.  *See Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). Facial plausibility merely "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Because the detail required to plausibly allege a claim depends on the complexity of the claim and its constituent elements, "in many straightforward cases, it will not be any more difficult today for a plaintiff to meet [his or her pleading] burden than it was before [the Supreme Court's decisions in *Twombly* and *Iqbal*]."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *see Litwin*, 634 F.3d at 718 (plaintiffs need only satisfy the basic notice pleading requirements of Rule 8 in order to survive a Rule 12(b)(6) motion).

In the context of wage and hour claims like those at issue here, the level of detail required to state such a claim remains fairly low even after *Twombly* and *Iqbal* because "the requirements to state a claim of a FLSA violation are quite straightforward."  *See, e.g., Sec'y of*

---

[3] In addition to this motion, certain defendants have separately moved for dismissal on the ground they are not "employers."  That motion is addressed in a separate response, and plaintiffs hereby incorporate by reference their arguments in opposition to that motion.

*Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008) (unpublished) (under *Twombly*, complaint need only allege a failure to pay overtime compensation to covered employees to state an FLSA claim); *McDonald v. Kellogg Co.*, No. 08-2473-JWL, 2009 WL 1125830, at *1 (D. Kan. Apr. 27, 2009) (federal courts in the wake of *Twombly* have held that extensive pleading is not required in the context of an FLSA claim and that allegations need only satisfy the requirements of Rule 8) (citing cases).

In the event that the Court determines that defendants' motion has any merit, even in part, plaintiffs respectfully submit that the proper remedy is to grant plaintiffs the opportunity to replead, and not to summarily dismiss, their claims. "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing 3 James Wm. Moore, et al., Moore's Federal Practice 15.08, 15.10 (2d ed. 1948)).

## ARGUMENT

## I.   THE COMPLAINT SUFFICIENTLY PLEADS CLAIMS PURSUANT TO BOTH THE FLSA AND THE NYLL[4]

In their Complaint, plaintiffs have both complied with the Dismissal Order and set forth more than sufficient detail to render their FLSA and NYLL claims "plausible," pursuant to the relevant pleading standards.[5] "In order to plead sufficient facts [under the FLSA], the

---

[4] Given the similarity between the NYLL and FLSA generally, *see* 29 U.S.C. § 203(g) (employ means "suffer[ed] or permit[ted] to work") and N.Y. Lab. Law §§ 2(7) (setting forth "permitted or suffered to work" standard), 651(5), courts analyze claims under both statutes together and seek to enforce the statutes consistently. *See Topo v. Dhir*, No. 01 Civ. 10881, 2004 WL 527051, *3 (S.D.N.Y. Mar. 16, 2004) ("There is general support for giving FLSA and the New York Labor Law consistent interpretations."). Thus, plaintiffs' FLSA discussion is equally applicable to claims under the NYLL.

[5] Indeed, in many instances courts have found properly alleged FLSA violations in complaints providing far fewer specific details than those alleged here. *See, e.g., Hinterberger v. Catholic Health*, No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008); *Gordon v. Kaleida Health*, No. 08-CV-378S, 2008 WL 5114217 (W.D.N.Y. Nov. 25, 2008); *Stickle v. SCI Western Mkt. Support Ctr., L.P.*,

4

plaintiff must indicate facts supporting the following: (1) defendant was plaintiff's employer; (2) plaintiff worked more than forty hours in a week; and (3) plaintiff did not receive compensation for his employment in excess of the forty hours." *Acho v. Cort*, No. C 09-00157, 2009 WL 3562472, at *2 (N.D. Cal. Oct. 27, 2009); *see* 29 U.S.C. § 207(a). The question on a motion to dismiss is whether the allegations plausibly indicate those elements. *See Labbe*, 319 Fed. App'x. at 763. Here, the Complaint plausibly indicates that plaintiffs worked in excess of 40 hours in a week but were not properly compensated for the hours worked and, thus, the motion to dismiss must be denied.[6]

As an initial matter, there is no dispute that the current Complaint complies with the directives of the Dismissal Order—indeed, defendants themselves admit that the instant complaint "literally" complies with that Order, providing the very information that this Court required. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* No. 11-cv-6658, Defendants' Memorandum in Support of Motion to Dismiss New York and Presbyterian Hospital ("Defs' Memo"), Docket No. 25 at 6.

Specifically, in response to the Dismissal Order's requirement that a Complaint "must set forth the approximate number of unpaid regular and overtime hours allegedly worked," (Dismissal Order at *4), paragraphs 71-73 of the Complaint properly set forth detailed allegations regarding the amount of time worked by each of the named plaintiffs—including providing calculations and approximations of the alleged uncompensated hours on

---

No. 08-083, 2008 WL 4446539 (D. Ariz. Sep. 30, 2008); *King v. Heritage Enters., Inc.,* No. 10-3039, 2010 WL 3433292 (C.D. Ill. Aug. 25, 2010).

[6] The first element, whether plaintiffs were employed by defendants, is conceded as to New York and Presbyterian Hospital. To the extent that defendants New York-Presbyterian Healthcare System, Inc., Dr. Herbert Pardes and Wayne Osten have separately moved for dismissal on the ground that they are not plaintiffs' employers, that issue is addressed in plaintiffs' separate response to that motion.

a weekly basis.[7]  The Dismissal Order also required allegations regarding each plaintiff's dates

of employment, pay, and positions (Dismissal Order at *4), and the Complaint again

provides such information.  Compl. ¶¶ 71-73, 7, 8.[8]

       Additionally, the Complaint sets forth allegations regarding the type of work that

resulted in the uncompensated time claimed by each named plaintiff.  Compl. ¶¶ 71-73.  For

example, Mr. Nakahata was "preparing patients for scheduled appointments or distributing

medication" during his missed or interrupted meal breaks.  *Id.* ¶ 71.  While working after

their scheduled end times, Ms. Gardocki and Ms. Delancy completed documentation, spoke

with management and continued regular patient care duties.[9]  *Id.* ¶¶ 72, 73.  Ms. Gardocki

---

[7] Defendants' contention that approximations are insufficient not only contradicts the Dismissal Order, but defendants themselves previously conceded an FLSA claim is sufficiently stated by setting forth the "approximate[] number of unpaid hours allegedly worked."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, No. 10-cv-2661 (S.D.N.Y.), Docket No. 155 at 4 (citing *Zhong v. August August Corp.*, 498 F.Supp.2d 625, 628 (S.D.N.Y. 2007)).  Defendants' instant attempt to argue for a far further heightened pleading standard would essentially require that any plaintiff bringing FLSA claims must recite in precise detail the exact date, time and work performed for each violation.  This is contrary to the FLSA itself, which places the burden of maintaining such records on *employers*, not employees.  *See, e.g., Acho*, 2009 WL 3362472, at *3 (plaintiff is not required to "plead specific instances of unpaid overtime before being allowed to proceed to discovery"); *Connolly v. Smugglers' Notch Mgmt. Co.*, No. 2:09-cv-131, 2009 WL 3734123, at *2 (D.Vt. Nov. 5, 2009); *Kane v. Cook Bros. Cos.*, Inc., No. 3:08cv0481, 2009 WL 179728, at *1 (M.D. Pa. Jan. 23, 2009); *Walling v. Bay State Dredging & Contracting Co.*, 3 F.R.D. 241 (D. Mass. 1942); *Wheeler v. U.S. Postal Serv.*, 120 F.R.D. 487, 488 (M.D. Pa. 1987).  Moreover, where, as here, defendants fail to maintain such records, plaintiffs are entitled to rely on their estimates.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

[8] Defendants are mistaken in their claim that each plaintiff's specific rate of pay is required.  The Dismissal Order contains no such requirement and the relevant case law rejects this contention.  *Nicholson v. UTi Worldwide, Inc.*, 309CV722JPG-DGW, 2010 WL 551551, at *4 (S.D. Ill. Feb. 12, 2010) (finding that no rule requires plaintiffs to allege an hourly rate); *Scott v. Bimbo Bakeries, USA, Inc.*, CIV.A. 10-3154, 2012 WL 645905, at *3 (E.D. Pa. Feb. 29, 2012) ("Plaintiffs do not include … their average hourly rate of pay … such specificity is unnecessary at this stage").

[9] An employer must pay its employees for all time "suffer[ed] or permit[ted]" to work. 29 U.S.C. ¶ 203(g).  Also, plaintiffs respectfully assert that work performed pre or post shift is compensable as part of a continuous workday under 29 U.S.C. 254(a)(2), (b)(1). Although the Portal to Portal Act exempts employers from compensating employees' activities which are "preliminary to or postliminary to said principal activity," it "has 'no effect on the computation of hours that are worked 'within' the workday."  *Hajny v. Best Roofing of New Jersey, Inc.*, No. 11 Civ. 00173, 2011 WL 2493737, at *3 (S.D.N.Y. June 22, 2011) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28, 126 S.Ct. 514 (2005)); *see also* 29 C.F.R. § 706(a) ("to the extent that activities engaged by an employee occurs after the employee

attended mandatory staff meetings and completed CPR training.  *Id.* ¶ 72.

Plaintiffs also describe the length of time spent performing this work.  *See, e.g., id.* ¶ 72 (Ms. Gardocki spent "an additional 30 minutes per week" at mandatory staff meetings).[10] Often this work resulted in time that was not paid properly.  *See id.* ¶¶ 140, 157.

Thus, plaintiffs have complied with the Dismissal Order.  Moreover, based on these allegations together with the remaining allegations of the Complaint, it is reasonably inferred and/or discovery can reasonably be expected to reveal that plaintiffs worked more than 40 hours in a week.  Defendants' policy of deducting time for a meal break regardless of whether the break was taken, the existence of which must be deemed true, makes it plausible that plaintiffs were not paid for all time worked, including overtime hours worked.  *Id.* ¶¶ 82-83, 112.  Similarly, defendants' failure to pay for other off the clock work before and after regularly scheduled shifts and during training also makes it plausible that plaintiffs were not paid for all time worked, including overtime hours worked.  *Id.* ¶¶ 114, 140, 142, 157.  The Complaint plausibly alleges that plaintiffs have suffered violations of the FLSA and/or NYLL. *See Acho*, 2009 WL 3562472, at *2; *see* 29 U.S.C. § 207(a).[11]

---

commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [254(a)] have no application.").  In *Hajny*, employees who were required to arrive prior to their scheduled start times to receive instructions had stated a plausible claim that their workday was continuous and compensable. *Hajny*, 2011 WL 2493737, at *3-4.  Here, similarly, plaintiffs' allegations assert work that is compensable because it was continuous to the regular workday.  *See, e.g.*, Compl. ¶ 73 (After her scheduled shift ended, Ms. Delancy continued her patient care duties and completed charting).

[10] Further, contrary to defendants' claims, plaintiffs' allegations demonstrate the amount of time spent working during unpaid missed or interrupted meal breaks.  For example, the complaint alleges Ms. Delancy performed an additional 2 hours and 20 minutes of uncompensated work a week, including approximately 50 minutes a week working post-shift.  Compl. ¶ 73.  Accordingly, three thirty minute meal breaks, resulting in an additional 90 minutes, were missed or interrupted in a given week.  The same analysis is applicable to the remaining named plaintiffs.

[11] *See also, e.g., Labbe*, 319 Fed. Appx. at 764; *Martinez v. Regency Janitorial Servs. Inc.*, No. 11-C-259, 2011 WL 4374458, at *3-4 (E.D. Wis. Sept. 19, 2011); *Arnold v. DirecTV, Inc.*, No. 4:10CV00352 AGF, 2011 WL 839636, at *7 (E.D. Mo. Mar. 7, 2011); *Anish v. Nat'l Sec. Corp.*, No. 10-80330-CIV,

Defendants' remaining arguments to the contrary are unavailing.  The contention that "in some instances" plaintiffs' allegations do not reach 40 hours in a week is wholly irrelevant.  Plaintiffs do not argue—nor do they need to argue—that their hours worked exceeded 40 hours in a week during each and every week of their employment.  Moreover, defendants themselves demonstrate that plaintiffs have provided sufficient factual detail when they argue that, pursuant to their calculations, the facts pled by Gardocki would result in a violation only where Gardocki worked through every meal break in a single week.  Even assuming, *arguendo*, that defendants have conducted the correct analysis, their analysis does no more than demonstrate that Gardocki's allegations plausibly alleges that she suffered a compensable violation in weeks where she worked during each lunch break.  Defendants' *belief* that it is "not plausible" that Gardocki worked during lunch every day in a single week is not a legal conclusion, but is simply their own, unsupported opinion.  At best, this analysis demonstrates that defendants are, in fact, on notice of the claims and any dispute regarding the accuracy of those claims will be resolved through discovery.

Accordingly, defendants' arguments that the complaint is not sufficiently pled must fail and this motion should be denied.

## II.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED OR PRECLUDED BY THE LMRA

Next, defendants argue that those plaintiffs who were members of a union cannot

---

2010 WL 4065433, at *2 (S.D. Fla. Oct. 15, 2010); *Moreno v. Ferretti Group of Am., LLC*, No. 10–24507–Civ, 2011 WL 4499031, at *1 (S.D. Fla. Sept. 27, 2011); *Allen v. City of Chicago*, No. 10 C 3183, 2011 WL 941383, at *6 (N.D. Ill. Mar. 15, 2011); *Hellenberg v. Integrated Deicing Servs., LLC*, No. 10-CV-11364, 2011 WL 317733, at *2 (E.D. Mich. Feb. 1, 2011); *Hofmann v. Aspen Dental Mgmt., Inc.*, No. 3:10-CV-37-SEB-WGH, 2011 WL 3902773 (S.D. Ind. Sept. 6, 2011); *In re Bank of America Wage and Hour Employment Litig.*, No. 10-MD-2138-JWL, 2010 WL 4180567, at *5 (D. Kan. Oct. 20, 2010); *Stark v. Audio Mktg. Solutions, Inc.*, No. 4:10CV3150, 2010 WL 3789572, at *4 (D. Neb. Sept. 21, 2010); *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2010 WL 551551, at *4 (S.D. Ill. Feb. 12, 2010); *see also Hinterberger*, 2008 WL 5114258; *Gordon*, 2008 WL 5114217; *Stickle*, 2008 WL 4446539.

assert the federal and state statutory claims alleged in the Complaint.[12]

As an initial matter, this argument is improper and must fail as it would require defendants to support their argument with record evidence—something they have not done and may not do on a motion to dismiss.  To succeed, defendants would have to show (1) the existence of a CBA, (2) a provision concerning the claims in the case, (3) that interpretation of that provision would be *required* for resolution of plaintiffs' claims, (4) the employees covered by the CBA, and (5) the workweeks those employees were covered.  Without this factual showing, defendants ask this Court to blindly dismiss plaintiffs' claims.  Obviously, such a request should not even be considered until a factual record has been presented by the parties.  *See Pruell*, 645 F.3d at 83 (reversing dismissal of complaint based on alleged LMRA preemption where defendants failed to demonstrate even the "threshold" requirements necessary to pursue such an argument).   In *Pruell*, the court noted that, even if the defendants had made the requisite threshold showing, it was still far from assured that dismissal would be allowed because a court would still need to determine whether the provision required "interpretation" as opposed to "consultation" of the CBA; whether the state law rights were non-waivable; and whether the claim should proceed as a federal claim in federal court or simply be dismissed.  *Id.* at 85, n. 4.[13]

The same issues exist here and, thus, should the Court consider defendants' preemption arguments despite the factual shortcomings identified above, defendants' motion should be denied.  Indeed, plaintiffs' claims under the FLSA and NYLL are not precluded by

---

[12] Defendants do not dispute that some employees were not in unions or subject to a collective bargaining agreement.  As such, there can clearly be no preemption for those employees.  *Pruell v. Caritas Christi*, 645 F.3d 81 (1st Cir. 2011).

[13] Additionally, New York courts have held that determining whether a CBA will result in preemption is premature on a motion to dismiss. *See, e.g., Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 4042929, at *5 (W.D.N.Y. Nov. 19, 2009).

the LMRA for the simple reason that plaintiffs here bring claims to vindicate rights arising from federal and state statutes, not from any CBA.  Section 301(a) of the LMRA provides federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization … or between any such labor organizations."  No such claim is at issue here, and the claims at issue do not require interpretation of any CBA.

Plaintiffs' claims assert independent, nonnegotiable rights that arise exclusively from the FLSA and the NYLL.  *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) ("[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," rather "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, that decides whether a state cause of action may go forward.")  (internal citations omitted).  The independent character plaintiffs' claim here is demonstrated by the fact that plaintiffs who were subject to a CBA assert precisely the same claims brought by those who were not subject to any CBA.  *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 n. 9 (1987).  The mere existence of CBAs applicable to some employees does not alter the relevant analysis.

The Supreme Court has held that the LMRA preempts a state law only where application of that law "*requires the interpretation* of a collective-bargaining agreement."  *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413 (1988) (emphasis added).  Thus, preemption may apply only where interpretation of the CBA is necessary—which is not the case here.  29 U.S.C. § 185(a); *see generally Lingle*, 486 U.S. at 403-06.[14]  Defendants'

---

[14] The cases cited by defendants support this contention because, unlike the claims at issue here, in those cases it was in fact *necessary* to interpret a CBA to determine the claims alleged in each of those cases.  *See Salemea v. Macy's East, Inc.,* 426 F.Supp.2d 149, 155 (S.D.N.Y. 2006) (plaintiffs' claim for failure to pay accrued vacation pay *according to CBA* required interpretation); *Heyer v. Morris Okun, Inc.*, No. 03 Civ. 2218, 2003 WL 21991583, at *3 (S.D.N.Y. Aug. 20, 2003) (claim for unpaid

attempts to argue to the contrary all must fail.

First, defendants' contention that reference to a CBA will be required to determine "if the FLSA and NYLL apply" is incorrect, unsupported and unsupportable. Def's Memo at 14-15. Defendants offer no real argument or authority that they are relieved from their statutory obligations. There is thus no dispute that defendants are legally bound to comply with those statutes with respect to plaintiffs' employment.

While defendants apparently intend to argue that at least some plaintiffs are classified by the statutes as exempt, that argument is insufficient on a motion to dismiss. Moreover, in the event defendants have, in fact, failed to pay plaintiffs correctly, as alleged, any effort by defendants to argue that they are somehow relieved of responsibility from their statutory obligations pursuant to the terms of a CBA must fail as parties are of course prohibited from contracting away their obligations under state and federal law. Indeed, any other conclusion would strip union employees of their right to enforce minimal substantive guarantees of state labor law simply because they chose to enter into a CBA. *See Livadas*, 512 U.S. at 129; *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755 (1985); *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1069 (9th Cir. 2007).

Defendants' attempt to argue that preemption is warranted because some factual overlap may exist between the CBAs and the claims at issue here—for example, with respect to applicable rates of pay—has been expressly rejected by the Supreme Court. Even where a court refers to a CBA with respect to the underlying facts related to an independent claim, preemption is not warranted. *See Lingle*, 486 U.S. at 413, n. 12 ("A collective-bargaining

---

commissions was "inextricably intertwined" with the CBA); *Garcia v. Allied Parking Sys.,* 300 A.D.2d 219, 219 (1st Dep't 2002) (claim for unpaid wages *at the rate specified in the CBA*); *Ellis v. Harpercollins Publishers, Inc.,* No. 99 Civ. 12123, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) (claim was dependent on the interpretation of the relevant CBA provisions).

agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled"); *Livadas,* 512 U.S. at 124 (citing *Lingle,* 486 U.S. at 413, n. 12) ("the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").  Even where resolution of a claim involves analysis of the same issues that would be required to determine whether there was a violation of a CBA, such "parallelism" does not invoke preemption of the state law.  *Lingle,* 486 U.S. at 408; *see also Livadas,* 512 U.S. at 124-25.

Thus, defendants' argument that plaintiffs' claims are preempted because they will require interpretation of CBA provisions regarding "hours worked and overtime, meal periods and training" must also fail.  *See* Defs' Memo at 14.  Indeed, these precise issues are defined by the applicable statutes and their interpreting law, and defendants have not and cannot offer any authority to demonstrate they can avoid these obligations through contract.[15]

Similarly, the issue of whether alleged preliminary/postliminary or training activities were compensable is again an issue determined by statute and thus not requiring interpretation of a CBA.  *See, e.g., Hawkins v. Securitas Sec. Servs. USA, Inc.*, No. 09 C 3633, 2011 WL 5122679, at *3-7 (N.D. Ill. Oct. 28, 2011); *O'Keefe v. Hess Corp.*, No. 10-2598(WJM), 2010 WL 3522088, at *3-7 (D.N.J. Sept. 1, 2010).[16]

---

[15] To the extent defendants argue plaintiffs are entitled to greater benefits under the CBA—for example, overtime pay after 7.5 hours in a day under the CBA, rather than after 40 hours in a week under the FLSA—this argument is equally unavailing.  Any such arguments are beyond the scope of this lawsuit.  The Complaint sets forth no claim seeking to redress violations of the CBA under the guise of statutory violations.  If the duty to pay for an alleged activity arises exclusively under a CBA, plaintiffs will not be able to prove that the failure to pay for that activity violated the wage statutes, the result being the failure of their claims, not a claim for violation or enforcement of the CBA.

[16] The Complaint sets forth in detail the nature of the allegedly uncompensated activities, all of which represent a continuation of plaintiffs' on-the-clock duties.  *See* Compl. ¶ 71 ("preparing patients for

12

The mere fact that the CBA makes reference to issues related to plaintiffs' claims does not have any impact on the issues presented in this case—whether employees were properly paid as required by the statutes.[17]  This is true regardless of whether, or to what extent, the CBA may govern or regulate the exact same rights at issue here; it is true regardless of whether the CBA provides a remedy for "conduct that coincidentally violates state law;" and it is true regardless of whether an arbitrator interpreting the agreement may reach a conclusion that is inconsistent "with a proper interpretation of state law."   *Lingle*, 486 U.S. at 413; *see Hawkins*, 2011 WL 5122679, at *3-7; *O'Keefe*, 2010 WL 3522088, at *3-7.

Here, defendants cannot establish that preemption is appropriate with respect to the substantive, nonnegotiable rights plaintiffs assert under federal and state statutes because defendants cannot show that plaintiffs' claims rise or fall based *solely* only the terms of a CBA.   *Livadas*, 512 U.S. at 123.   It cannot be stated on a motion to dismiss that interpretation of a CBA will be required and, thus, defendants' motion must fail.   *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 90, n. 4 (2d Cir. 2010); *Prudenti v. Daily News, L.P.*, No. 10 Civ. 8964(RJS), 2011 WL 2899226, at *4 (S.D.N.Y. July 11, 2011).

### A.     Courts Have Expressly Held that NYLL and FLSA Claims are not Preempted by CBAs

In accordance with the foregoing, preemption is not appropriate where, as here,

---

scheduled appointments or distributing medication"); ¶ 72 (mandatory staff meetings); ¶ 73.  Further, the Complaint alleges plaintiffs were not relieved of their regular duties both during meal breaks as well as before and after their scheduled shifts, and thus were performing the same compensable activities they performed during their regularly scheduled shifts. *See e.g. id.* ¶ 73 (Ms. Delancy completed charting and *continued patient care duties* after her scheduled shift).

[17] Defendants also improperly request that the Court evaluate whether plaintiffs' claims constitute work or are *de minimus*.  While this issue yet again improperly raises factual questions, defendants are also wrong on the law.  As one court recently held, even the underpayment of 1-5 minutes violates the FLSA.  *See Rother v. Lupenko*, No. 08-161, 2011 WL 1311773, at *2 (D. Or. Apr. 1, 2011) (citing 29 C.F.R. § 785.47).  Regardless, plaintiffs have alleged lengths of time spent performing work that *cannot*, under even defendants' misguided standard, be considered *de minimus*.  *See* Compl. ¶¶ 71-73.

plaintiffs seek only proper payment of wages under the NYLL, because the Supreme Court has expressly held that state wage payment statutes are not preempted by the LMRA. *See Lividas,* 512 U.S. at 111-13. The Supreme Court found there was not "even a colorable argument that a claim under [a state's general wage payment statute] was pre-empted" in enforcing wages due under a CBA, *id.* at 124, and that it "is clear beyond preadventure" that preemption cannot displace state wage payment statues. *Id.* at 124, n.18. *See also  Martin v. Shaw's Supermarkets Inc.*, 105 F.3d 40, 42 (1st Cir. 1997) (there must be "a *real* interpretive dispute and not merely a pretended dispute.") (emphasis in original).

Accordingly, courts have found that state wage and hour statutes are not preempted by the LMRA § 301 because the statutes are substantive protections that are not influenced by what a collective bargaining agreement provides. *See Self v. United Parcel Serv., Inc.*, 970 P.2d 582, 589 (N.M. 1998); *Rawson v. Tosco Ref. Co.*, No. C-95-3904, 1996 WL 33991 (N.D. Cal. Jan. 24, 1996); *Sellars v. Safeway, Inc.,* No. 05-1013, 2006 WL 2729269 (D. Or. Sept. 22, 2006); *Spoerle v. Kraft Foods Global, Inc.,* 614 F.3d 427 (7th Cir. 2010); *Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166, 171 (1st Cir. 1998); *Martin,* 105 F.3d at 43.

Likewise, the Supreme Court and other courts have expressly held that the protections of the FLSA arise independently of any CBA and therefore are actionable regardless of the terms of any CBA. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 745 (1981); *Tran v. Tran*, 54 F.3d 115, 117-18 (2d Cir. 1995); *Rees v. Souza's Milk Transp., Co.*, No. CVF0500297, 2006 WL 738987, at *8 (E.D. Cal. Mar. 22, 2006); *Spoerle,* 527 F.Supp.2d at 870-71; *Moeck v. Gray Supply Corp.,* No. 03-1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006); *Hinterberger,* 2008 WL 5114258, at *7 ("Employees' rights to minimum wage and overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out

14

of an applicable collective bargaining agreement.") (internal citation omitted); *Gordon*, 2008 WL 5114217, at *7 (same).

Thus, it is the FLSA that preempts any contrary CBA because employees' FLSA rights cannot be abridged by contract.[18]  Moreover, there is simply no authority for preemption of one federal statute by another because preemption is derived from the Supremacy Clause of Art. VI of the Constitution, which of course makes federal law supreme over state law, not other federal law.  *See generally Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985).

### B.   Plaintiffs' Claims are not Barred by Failure to Use a Grievance Procedure or to Exhaust Administrative Remedies

Defendants' argument that plaintiffs' FLSA claims are precluded for failure to submit to the CBA's grievance and arbitration procedure has no basis under the law.  This imaginative preclusion "doctrine," in effect, suggests that an employer and labor union can execute an agreement that trumps a federal statue.  However, that is not the law, and plaintiffs' FLSA rights and claims here are not precluded.

Further, defendants fail cite any case law lending support to their contention that plaintiffs' FLSA claims should be precluded.  In fact, each case defendants rely upon is readily distinguishable.  For example, in *Vadino v. A. Valey Engineers,* the court's unremarkable holding was that a rate dispute under the CBA had to be resolved under the LMRA—not that the FLSA was preempted. 903 F.2d 253 (3d Cir. 1990). Indeed, the court "envisioned" that the rate dispute should be resolved under the LMRA concurrently with an FLSA action to determine proper overtime compensation.  *Id.* at 266.  Defendants' reliance on *Townsend v.*

---

[18] If the Court were to accept defendants' argument that the LMRA wholly precludes application of the FLSA, then, taken to its logical end, an employer could use a CBA to circumvent the requirements of the FLSA and compensate employees at rates lower than the statutory minimums.  Clearly, Congress would never have intended such a result.

*BC Natural Chicken LLC* is equally misplaced.  In that case, interpretation of a CBA was required to resolve a donning and doffing claim in light of a specific provision of the FLSA deferring to the terms of a CBA in the context of donning and doffing claims.  No. 06-4317, 2007 WL 442386, at *4 (E.D. Pa. Feb. 2, 2007).  Here, in contrast, no donning and doffing claims are at issue and plaintiffs' FLSA claims do not require interpretation of any CBA.

Finally, in *Martin v. Lake County Sewer Co., Inc.,* 269 F.3d 673 (6th Cir. 2001), plaintiffs asserted claims under the LMRA and the NLRA, in addition to alleging FLSA claims.  *Id.* at 676.  Plainly, plaintiffs here have not alleged any violation of either of those statutes, and the case is distinguishable on that ground alone.  Moreover, the *Martin* plaintiff specifically invoked interpretation of a CBA in making his FLSA claims by alleging that his employer was "[i]n breach and violation of the Agreement, [and] did not pay plaintiff according to the Agreement." *Id.* at 679.  The *Martin* court concluded that this conflation of claims was an effort to apply the FLSA's lengthier statute of limitations to Martin's CBA claim.  *Id.* at 678-79.  Notably, the court still *did not dismiss plaintiffs' FLSA claim*, but instead permitted that claim to proceed pursuant to a limited statute of limitations. *Id.*[19]

Likewise, defendants' argument that plaintiffs were required to exhaust available administrative remedies must be rejected.  Plaintiffs are not required to exhaust arbitration procedures on statutory claims absent a clear and unmistakable intent to arbitrate, a showing which cannot be made here.  *See, e.g., Giles v. City of New York,* 41 F.Supp.2d 308, 311-13

---

[19] The remainder of defendants' cited cases are similarly unpersuasive.  For example in *Eldred v. Comforce Corp,* plaintiffs' claim expressly noted "the importance of the CBA, and asks the Court to interpret the CBA[]."  No. 3:08-CV-1171, 2010 WL 812698, at *6 (N.D.N.Y. Mar. 2, 2010). *See also Hoops v. KeySpan Energy,* 794 F.Supp.2d 371, 377 (E.D.N.Y. 2011) (alleging a violation resulting from the failure to include shift provisions of a CBA in overtime pay); *Elswick v. Daniels Electric Inc.,* 787 F.Supp.2d 443, 448 (S.D. W.Va. 2011) (determining whether plaintiff "was entitled to the relief he seeks can be determined only by interpreting the CBA.").

(S.D.N.Y. 1999) (CBA did not require exhaustion of arbitration procedures for FLSA claims because there was no "clear and unmistakable waiver" of rights) (quoting *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 70 (1998)). *See also Louis v. Geneva Enters., Inc.*, 128 F.Supp.2d 912, 917 (E.D.Va. 2000); *O'Brien v. Town of Agawam*, 350 F.3d 279, 285-86 (1st Cir. 2003); *Torres v. Gristede's Operating Co.*, 628 F.Supp.2d 447, 464-65 (S.D.N.Y. 2008).[20]

Thus, Defendants' preclusion and preemption arguments fail, however analyzed, because plaintiffs' NYLL and FLSA claims neither arise from a CBA nor require its interpretation.  Defendants' motion to dismiss plaintiffs' claims on this basis must fail.

## III.   DEFENDANTS' REMAINING ARGUMENTS ARE PREMATURE AND IMPROPERLY ADDRESS ISSUES OF MERITS OR CLASS CERTIFICATION

Defendants' remaining arguments improperly turn to the merits of plaintiffs' claims. Such arguments must be rejected on a motion to dismiss as determining the facts or merits of the case, prior to discovery, is premature. *See DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003); *E.S. Originals Inc. v. Totes Isotoner Corp.*, 734 F.Supp.2d 523, 528 (S.D.N.Y. 2010).  In fact, the ultimate issue in this case is whether employees were properly paid under the relevant statutes for all time they were suffered or permitted to work by defendants. Ultimately, the Court or a jury will have to decide the central factual question of whether employees performed work without compensation. Further, defendants are in possession of much of the information they suggest is missing in the complaint, including who, what, or

---

[20] Defendants' cited authority is, again, factually inapposite as the claims in those cases, in contrast to the instant Complaint, did not seek simply to enforce statutory rights.  *See Vera v. Saks & Co.*, 335 F.3d 109, 115-16 (2d Cir. 2003) (mere reference to a CBA for information such as rate of pay would not require preemption; when alleged legality was an specific term of the CBA, however, interpretation was required); *Vaca v. Sipes*, 386 U.S. 171 (1967) (wrongful termination claim was based exclusively on breach of the CBA); *Allis-Chambers Corp.*, 471 U.S. at 220 (finding claim "substantially dependent upon analysis of the terms of an agreement").

how these policies were conceived.[21]   To the extent the information is not alleged in the Complaint, discovery is warranted. Thus, defendants' factual arguments that the alleged policies are legal, that the named plaintiffs lack standing, and that plaintiff Nakahata has alleged incorrect dates of employment are all improper grounds for a motion to dismiss.

### A.    Defendants' Argument That the Alleged Policies are "Lawful" is Not a Proper Ground for Dismissal and is Incorrect

Defendants' argument that the alleged policies are "lawful" is an issue regarding the merits that is not proper for resolution on a motion to dismiss.[22]   Even if the Court were to reach the substance of this argument, defendants' motion must still be denied because the Complaint plausibly alleges that defendants are liable for their policies in at least four ways.

First, the cornerstone of the FLSA is its requirement that an employer must pay for all time that employees are "suffer[ed] or permit[ted]" to work.  29 U.S.C. § 203(g).  Congress deliberately used the broad term "permitted."  Under the statute's plain terms, an employer cannot choose to pay for something less—such as only the time the employer requests work, or only time an employee records as being worked.  The law is equally clear that the "permit" standard mandates payment for time that an employee performs work against the employer's policy, as well as time that the employee does not record, even if the employer's policy requires it to be recorded.  *See* 29 C.F.R. § 785.13.  Thus, defendants must pay for all time employees spent working during meal breaks, before or after shifts and during training.

---

[21] Defendants improperly rely on *Saleen v. Waste Mgmt. Inc.,* 649 F.Supp.2d 937 (D. Minn. 2009) to suggest that plaintiffs' complaint must allege who instituted the policies, where they were memorialized and how they were carried out.  Indeed, the Court in *Saleen* was considering a motion for conditional certification, not a motion to dismiss.  To the extent the Court follows *Saleen,* plaintiffs have set forth a "colorable basis" to infer the existence of an unlawful company-wide policy. *See e.g.* Compl.  ¶¶ 71-73, 80-158.

[22] Defendants' citation to *Frye,* a decision involving the decertification of a class following full discovery, only further illustrates the prematurity of their arguments.  *See Frye,* 2010 WL 2862591.

Significantly, the use of an automatic deduction for meal breaks is particularly susceptible to violating the law for failing to ensure that employees are paid for all hours suffered or permitted to be worked, because, in essence, the Meal and Break Deduction Policy assumes that every hourly employee, every shift at every location will receive an uninterrupted meal break.[23]

To be sure, the Department of Labor ("DOL") has been clear that health care employers—specifically hospitals—cannot legally utilize an automatic meal deduction policy *unless* they ensure that the employee is not working during that meal period. "When choosing to automatically deduct, the employer *must ensure* that the employees are receiving the full meal break."  U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #53 – The Health Care Industry and Hours Worked (July 2009), at 3 (emphasis added), attached to the affirmation of Jessica L. Witenko ("Witenko Aff") as Ex. A.[24]

There may be occasional environments where an employer can effectively ensure that

---

[23] If such circumstances were true, there would be no violation of the FLSA – which is why automatic meal break deductions are not a *per se* violation of the FLSA.  However, automatic deductions are likewise not *per se* legal.  Depending on the circumstances, automatic deductions often result in FLSA violations, particularly given all of the facts that must line up in defendants' favor to avoid a violation.  To that end, each cases cited by defendants for the suggestion that dismissal is warranted because automatic meal break cases do not *per se* violate the FLSA are inapplicable.  Each of those cases, including *Camesi v. University of Pittsburgh Med. Ctr.,* No. 09-85J, 2011 WL 6372883 (W.D. Pa. Dec. 20, 2011) and *Frye v. Baptist Mem'l Hosp.,* No. 07-2709, 2010 WL 3862591 (W.D. Tenn. Sept. 27, 2011), involve the decertification or certification of a class, not a motion to dismiss.

[24] The DOL's requirements are consistent with the case law.  *See, e.g., Brown v. L & P Indus., L.L.C.,* No. 04CV0379, 2005 WL 3503637, *6 (E.D. Ark. Dec. 21, 2005) (employer could "only [deduct lunch breaks] if [the employee] was relieved of all duties during that time.") (citing 29 CFR § 785.13); *Chao v. Self-Pride, Inc.,* No. Civ. RDB 03-3409, 2005 WL 1400740, at *8 (D. Md. June 14, 2005).  The violation alleged here—instituting an automatic deduction *without* ensuring employees are relieved of work during the corresponding break—is precisely the type of claim that triggers conditional or final Rule 23 certification.  *See Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.,* No. 09-CV-379, 2009 WL 15115175 (W.D. Pa. June 1, 2009); *Camesi v. Univ. of Pittsburgh Med. Ctr.,* No. 09-85J, 2009 WL 1861265 (W.D. Pa. May 14, 2009); *Hamelin v. Faxton-St. Luke's Healthcare,* No. 08-01219, 2011 WL 1938677, at *20 (N.D.N.Y. Mar. 8, 2011); *Meyers v. Crouse Health Sys., Inc.,* No. 08-01221, 2011 WL 1940343, at *17-18 (N.D.N.Y. Mar. 8, 2011); *Colozzi v. St. Joseph's Hosp. Health Ctr.,* No. 08-01220, 2011 WL 1942190, at *19-20 (N.D.N.Y. Mar. 8, 2011).

breaks are taken and, thus, where an automatic deduction could be workable. A factory, for example, may shut down for a lunch break when employees simply cannot work. But a hospital is not such an environment and therefore, because defendants cannot and do not effectively ensure that employees are relieved of work, they cannot legally deduct the meal breaks.

Second, defendants are also liable because they failed to ensure that work time was accurately recorded, which always remains the employer's non-delegable legal responsibility that cannot be shifted to the hourly workforce. In fact, recently the Second Circuit directly opined on this issue explaining, "it is important to recognize that *an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable.*" *Kuebel v. Black & Decker,* ___ F.3d ___, No. 10-2273-cv, 2011 WL 1677737, at *8 (2d Cir. May 5, 2011) (emphasis added) (citing 29 U.S.C. § 211(c)); *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 288 (2d Cir. 2008); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 944, 946 (2d Cir. 1959); *accord Castillo v. Givens,* 704 F.2d 181, 194 (5th Cir. 1983); *see also Mitchell v. Reynolds,* 125 F. Supp. 337, 340 (W.D. Ark. 1954). Thus, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Kuebel,* 643 F.3d at 363. The DOL and numerous courts have held that a policy to shift the burden of recording work to the employees creates liability for the employer. *See* U.S. Dep't of Labor, Wage & Hour Div., Op. Letter FLSA2008-7NA (May 15, 2008) (Witenko Aff. Ex. B); *Mumbower v. H. R. Callicott,* 526 F.2d 1183, 1188 (8th Cir. 1975); *Kimbell v. Dynamic Strategy, Inc.,* No. 08-1175, 2009 WL 1651431, at *5 (M.D. Tenn. June 12, 2009); *McGrath v. Cent. Masonry Corp.,* No. 06-cv-00224-CMA-CBS, 2009 WL 3158131, at *6 (D. Colo. Sept. 29, 2009); *Beauperthuy v.*

*24 Hour Fitness USA, Inc.*, No. 06-0715 SC, 2008 WL 793838 (N.D. Cal. Mar. 24, 2008);
*Chao v. Pac. Stucco*, No. 04-CV-0891-RCJ-GWF, 2006 WL 2432862, at *6 (D. Nev. Aug. 21,
2006).

Third, defendants' liability will be demonstrated through testimony from employees
who worked off-the-clock.  Routinely, employees who perform work off-the-clock prove their
allegations through representative testimony from a sample of employees.  *See Reich v. S. New
England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997); *see also Reich v. Gateway Press, Inc.*,
13 F.3d 685, 701 (3d Cir. 1994).  After discovery, plaintiffs expect to prove their claims at
trial through the use of representative testimony.

Fourth, defendants fail to take all reasonable efforts to record time and pay for all
time worked.  In determining whether employers have taken all reasonable efforts, courts
have held that an employer must pay for any time it "should have known" employees were
working.  Thus, employers are liable under a constructive knowledge standard, not a standard
requiring actual knowledge. *See* 29 CFR § 785.11; *see also, e.g., Barvinchack v. Ind. Reg'l Med.
Ctr.*, No. 3:2006-69, 2007 WL 2903911, at *13 (W.D. Pa. Sept. 28, 2007); *Reich v. Dep't of
Conservation of Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994).  Employers also have a
duty to inquire, *e.g., Chao*, 514 F.3d at 291, and if an employer does not want to pay for
work, it must prevent that work from being performed.  *See* 29 C.F.R. § 785.13.  *See also
Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 136-37 (2d Cir. 2008).  Such a rule
prevents employers from relying on an "ostrich" defense by arguing ignorance of violations
after failing to inquire as to whether any existed. *Cunningham v. Gibson Elec. Co.*, 43 F.Supp.2d
965, 976 (N.D. Ill. 1999).

Therefore, this argument is improper and insufficient, and defendants' motion to

dismiss should be denied.

    **B.**    **Defendants' Argument That Plaintiffs Lack Standing is Not a Proper Ground for Dismissal and is Incorrect**

Defendants' argument that plaintiffs lack standing, either individually or on behalf of a class, is meritless.[25]

Plaintiffs have individual standing because they allege they were personally injured by defendants' failure to properly compensate them and that a favorable decision by the Court would redress that injury. *See* Compl. ¶¶ 71-188. *See Indergit v. Rite Aid Corp.,* No. 08 Civ. 9361(PGG), 2009 WL 1269250, at *3 (S.D.N.Y. 2009); *Lujan v. Defenders of Wildlife, Inc.,* 504 U.S. 555, 560-61 (1992). Additionally, plaintiffs have sufficiently alleged standing to represent other class members. Plaintiffs allege they and the other class members were all denied proper compensation. *See* Compl. ¶¶ 70-188. Plaintiffs allege they and the class members suffered this injury because they were subject to common policies. *See* Comp. ¶¶ 7, 8, 71-73, 80, 112, 140, 157.

Defendants' argument is improper on a motion to dismiss, moreover, as courts require a "much more fully developed factual record" than exists here, before any discovery, to evaluate plaintiffs as representatives of a class. *Indergit,* 2009 WL 1269250, at *2.

Defendants' claim that plaintiffs lack standing based on defendants' assertion that some plaintiffs are salaried employees must also be rejected. Plaintiffs have alleged they were hourly employees, an assertion which must be accepted as true on a motion to dismiss. *See*

---

[25] To the extent defendants suggest striking class allegations, defendants have already conceded that such a consideration is premature in absence of a certification motion. *See Nakahata v. New York-Presbyterian,* No. 11-0734 (2d Cir.) Brief for Defendants-Appellees, Docket No. 97 at 53.

Compl. ¶¶ 7, 8, 188.[26]   Furthermore, defendants' assertion that they themselves classified plaintiffs as exempt is not dispositive of the issue.   *See, e.g., Donovan v. Public Policy Ctr. of N.J.*, No. 05-1181, 2006 WL 1373230, at *7 (D.N.J. May 17, 2006); 29 C.F.R. § 541.2. Ultimately, whether any exemption under the FLSA applies is an intensive factual inquiry far beyond the standard for a motion to dismiss.  *Herman v. Continental Grain Co.*, 80 F.Supp.2d 1290, 1296 (M.D. Ala. 2000) ("the question of exemption … is not an appropriate subject to be raised on a Motion to Dismiss.").   *See also Moran v. GTL Const., LLC,* No. 06 Civ. 168(SCR), 2007 WL 2142343, at *3 (S.D.N.Y. July 24, 2007); *Donovan*, 2006 WL 1373230, at *8.  To the extent defendants continue to assert that the plaintiffs are exempt, resolution of this issue will have to await the development of a full factual record.[27]  At this stage, however, plaintiffs' have sufficiently pled that they were hourly employees.

Moreover, the propriety of a class or subclasses is properly determined on a motion for class certification and cannot be decided on a motion to dismiss.  *See, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21-22 (2d Cir. 2003); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007); *Lang v. DirecTV, Inc.,* No. 10-1085, 2010 WL 3211081, at *7-8 (E.D. La. Aug. 13, 2010).  The decision whether to certify a class

---

[26] In the Dismissal Order, this Court properly noted that plaintiffs' allegation that they were hourly employees is sufficient to survive a motion to dismiss.  Dismissal Order at *4, n. 11.  Moreover, this merits-based argument must await a fully developed factual record at this prediscovery stage of litigation.  For example, plaintiffs' paychecks support their allegations by demonstrating they were paid on an hourly basis and subject to variations in pay according to the quantity of work performed. *See* Witenko Aff., Exhibit D.  *See also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1061 (2d Cir. 1988); *Bongat v. Fairview Nursing Care Ctr.*, 341 F.Supp.2d 181, 185 (E.D.N.Y. 2004); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615 (2d Cir. 1991); *Torres*, 628 F.Supp.2d at 456.  Discovery will certainly shed light on this contested factual issue but, in any event, it is improper for consideration on a motion to dismiss.

[27] At the appropriate time, to the extent this assertion plays any role in this case, defendants will bear the burden of demonstrating that an exemption applies. *See, e.g., Adams v. Dep't of Juvenile Justice of City of New York*, 143 F.3d 61, 65 (2d Cir. 1998); *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746, 2004 WL 1926087, at *4 (S.D.N.Y. Aug. 31, 2004).

must be based on the record supporting a motion to certify and the discovery preceding that motion, not on a complaint simply providing notice of the action.

For the same reasons, defendants' claims that it may subsequently be "implausible" to certify such a large class or that any resulting class would be unmanageable, requiring individualized inquiries, are premature and must await briefing specific to certification issues. Even at that time, defendants' arguments will likely be unavailing as the standard for conditionally certifying a collective action is lenient. *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319(PAC), 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006). Even the existence of individual differences is not sufficient to defeat conditional certification. *See, e.g., Mendez v. The Radec Corp.*, 232 F.R.D. 78, 93-94 (W.D.N.Y. 2005); *Searson v. Concord Mortg. Corp.*, No. 07-CV-3909, 2009 WL 3063316, at *6 (E.D.N.Y. Sept. 24, 2009).

In any event, the Complaint alleges sufficient facts to assert collective action claims. *See Nicholson*, 2010 WL 551551, at *6. Plaintiffs plainly provide allegations to plausibly suggest that defendants maintained company-wide policies that were uniformly applied to all hourly workers and resulted in a failure to properly compensate those employees for all hours worked including hours in excess of 40 per week. Plaintiffs' class allegations should therefore not be dismissed and defendants' standing argument should be rejected.

**C.   Defendants' Argument That Nakahata's FLSA Claims are Time Barred is Not a Proper Ground for Dismissal and is Incorrect**

As an initial matter, defendants' argument with respect to plaintiff Nakahata only has no bearing on the claims of any other named plaintiff and, thus, no bearing on the viability of the collective action claims.

Defendants ask the Court to engage in a factual dispute to determine whether plaintiff

24

Nakahata's FLSA claims are time barred.[28]  Such an argument, including defendants' request that the Court consider extrinsic evidence in the form of an affidavit, is improper on a motion to dismiss.  *See Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *Becker v. Buffalo Pub. Schs.*, No. 07-CV-343A, 2008 WL 4239035, at *2 (W.D.N.Y. Sept. 11, 2008).

Plaintiffs allege that Nakahata was employed "through May 27, 2008."  Compl. ¶ 71.  Further, plaintiffs' allege that the violations suffered were willful, thus invoking the FLSA's three-year statute of limitations.  Compl. ¶¶ 176, 190.  Therefore, accepting plaintiffs' allegations as true, defendants' motion must be denied.

Further, even if defendants' contention regarding Nakahata's dates of employment were correct, additional legal and factual analysis is nonetheless required in light of the allegation that Nakahata's claims are subject to tolling.  *Id.* ¶ 175.  Thus, to reach a conclusion regarding this issue the Court would need to analyze, for example, whether equitable estoppel is warranted due to defendants' acts or in light of tolling applicable to the time period during which Nakahata's claims were pending in the *Nakahata I* action.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' motion to dismiss in its entirety, and alternatively grant plaintiffs leave to amend the complaint if necessary.

---

[28] Defendants do not dispute that Nakahata's claims under NYLL, which applies a six-year statute of limitation, are timely.  Thus, even if defendants' argument were both proper on a motion to dismiss and correct, Nakahata may proceed as a representative of the NYLL class.

Date: April 16, 2012.

THOMAS & SOLOMON LLP

s/ Jessica L. Witenko
J. Nelson Thomas, Esq.
Michael J. Lingle, Esq.
Annette M. Gifford, Esq.
Jessica L. Witenko, Esq.
  *Attorneys for Plaintiffs*
693 East Ave.
Rochester, NY 14607
Telephone: (585) 272-0540
Facsimile: (585) 272-0574
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
agifford@theemploymentattorneys.com
jwitenko@theemploymentattorneys.com