Kenneth J. Kelly
James S. Frank
Kenneth W. DiGia
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4500

Terrence K. McLaughlin
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendant
The New York and Presbyterian Hospital

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASAHIRO NAKAHATA, DIANA GARDOCKI and  :
CYNTHIA DELANCY,

                                   :   **ECF CASE**

on behalf of themselves and all other employees similarly  :
situated,

                                 :

               Plaintiffs,  :   Docket No. 11-cv-6658 (PAC) (RLE)

                                 :

          - against -  :

                                 :

NEW YORK-PRESBYTERIAN HEALTHCARE  :
SYSTEM, INC., THE NEW YORK AND
PRESBYTERIAN HOSPITAL, HERBERT PARDES,  :
AND WAYNE OSTEN,

                 Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF DEFENDANT
THE NEW YORK AND PRESBYTERIAN HOSPITAL**

## TABLE OF CONTENTS

**PAGE**

ARGUMENT ...................................................................................................................1

POINT I  PLAINTIFFS HAVE FAILED TO SATISFY
APPLICABLE PLEADING STANDARDS .........................................................1

    A.  Plaintiffs Fail to Plead Plausible Wage Claims
under the FLSA and NYLL ............................................................................1

    B.  Plaintiffs Fail to Show the Alleged "Policies"
are Unlawful......................................................................................................3

POINT II  THE FLSA AND NYLL CLAIMS ARE BARRED .............................................4

    A.  The NYLL Claims are Preempted ..................................................................5

    B.  The FLSA Claims are Barred ..........................................................................8

POINT III  PLAINTIFFS LACK STANDING TO REPRESENT
ANYONE BUT THEMSELVES IN THIS ACTION .............................................9

CONCLUSION.......................................................................................................................10

i

## Argument

### POINT I

#### PLAINTIFFS HAVE FAILED TO SATISFY
#### APPLICABLE PLEADING STANDARDS

**A.    Plaintiffs Fail to Plead Plausible Wage Claims under the FLSA and NYLL**

A plaintiff's factual allegations against each defendant must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-680 (2009); *Astra Media Group, LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334 (2d Cir. 2011). To be plausible, the allegations must have " 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Castiglione v. Papa*, 434 F. App'x 10, 12 (2d Cir. 2011) (citation omitted). Pleadings "that [offer] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (citation omitted). Like plaintiffs' Second Amended Complaint which the Court dismissed in *Nakahata I*, the Complaint here is another "vivid demonstrative of how not to plead." (January 28, 2011 Opinion & Order ("Order") at 13.)

Plaintiffs ignore the Court's Order, by failing to allege--even as to the two remaining named plaintiffs--such facts from which the Court can determine plausible allegations of specific compensable work that is more than *de minimis* and resulted in hours worked entitling them to statutory overtime for which they were not paid. *Wolman v. Catholic Health Sys. of Long Island, Inc.* ___ F. Supp. 2d ___, 2012 WL 566255, at * 9-12 (E.D.N.Y. Feb. 16, 2012); Order at 6-7.

Plaintiffs contend that they worked during various periods without compensation, but they do not allege facts showing that they missed one specific meal break in one specific week in which they worked over forty hours. (Complaint, ¶¶ 71-72.) Nor do they identify a single individual who allegedly expected or asked either of them to work through a meal break or

before or after a shift knowing it would not be paid. (Plaintiffs' Brief, 6.) Likewise, the Complaint does not plausibly plead any facts about when plaintiffs allegedly participated in compensable trainings or pre- or post-shift work; in what time period they worked these alleged hours; or how often they did so.[1] *Pruell v. Caritas Christi*, ___ F.3d ___, 2012 WL 1324455, at *3 (1st Cir. Apr. 18, 2012); *Wolman,* 2012 WL 566255, at * 9-12.

Plaintiffs also must plausibly estimate the hours worked without compensation to substantiate a claim under the FLSA. *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 546 (S.D.N.Y. 2009). This Court dismissed the Second Amended Complaint in *Nakahata I* because plaintiffs had alleged only that they "regularly worked hours both under and in excess of forty per week", Order, 8-9, yet they repeat this omission again in their current Complaint. For example, plaintiffs describe the number of hours that they "typically" and "occasionally" worked, which is tantamount to again stating that they sometimes worked more than forty hours a week, and sometimes less. Complaint, ¶¶ 71, 72; NYPH Initial Mem., 6; *see also Villegas v. J.P. Morgan Chase & Co.*, No. C 09-00261 (SBA), 2009 WL 605833, at *5 (N.D. Cal. Mar. 9, 2009). Moreover, even if plaintiffs were entitled to overtime, which, as salaried, professional registered nurses they are not, the allegation that they worked in excess of 40 hours in any given week is meaningless and does not necessarily implicate the FLSA. In the healthcare industry employers are expressly allowed to alter by agreement the statutory workweek converting overtime for all hours in excess of 40 to all hours in excess of 8 in any day or 80 in a given two week period.[2] 29 U.S.C. § 207(j); 29 C.F.R. § 778.601.

---

[1] Defendants do not address the allegations or arguments made by former named plaintiff Cynthia Delancy (the only non-union plaintiff) since she has voluntarily withdrawn, and been dismissed, from this action. (DE Nos. 33, 34.)

[2] A permissible version of this rule is contained in the collective bargaining agreement to which plaintiffs were both subject during their employment. (Complaint, Ex. D § 6.03; ¶¶ 71, 72.)

Finally, contrary to their assertion, Plaintiffs' Brief, 6, n.8, plaintiffs fail to plead their wage rates notwithstanding the requirement that they do so. Order, 9; *Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043 (JGK), 2010 U.S. Dist. LEXIS 137129, at *12-13 (S.D.N.Y. Dec. 17, 2010) (citation omitted); *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007).

**B.      Plaintiffs Fail to Show the Alleged "Policies" are Unlawful**

First, plaintiffs argue that "the cornerstone of the FLSA is its requirement that an employer must pay for all time that employees are 'suffer[ed] or permit[ted]' to work." (Plaintiffs' Brief, 18.) That unremarkable proposition does not further their linchpin position regarding "unlawful" policies, and plaintiffs fail to cite any authority holding that an employer's automatic meal period deduction policy is per se unlawful, which it is not. *Wolman*, 2012 WL 566255, at * 7; NYPH Initial Mem., 8-9.

Nor is there any duty for an employer to "ensure" that employees perform no work during meal breaks. Plaintiffs' Brief, 19; *see also Wolman*, 2012 WL 566255, at * 8.   In fact, the FLSA does not require an employer to provide meal periods to employees in the first place. If an employer chooses to provide a meal period, its sole duty is to ensure that the employees are properly paid for time worked if the meal period is spent "predominantly for the employer."[3] *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997); *see also Deppen*, 2011 U.S. Dist. LEXIS 78247, at *24-25.[4]

---

[3]  Plaintiffs' reliance on, for example, *Hamelin v. Faxton-St. Luke's Healthcare*, Civ. A. No. 6:08-cv-1219 (DNH/DEP), 2009 U.S. Dist. LEXIS 9793 (N.D.N.Y. Jan. 26, 2009), is misplaced. As explained by the district court in *Deppen v. Detroit Med. Ctr.*, No. 10-1229, 2011 U.S. Dist. LEXIS 78247, at *25-26 (E.D. Mich. July 19, 2011), "*Hamelin* does not hold that employers are required to keep a record of employees' meal breaks. In *Hamelin*, the district court was presented with the question of whether the action should proceed as a collective action under 29 U.S.C. § 216(b).... The *Hamelin* court noted that 'the mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal period breaks in and of itself does not violate the FLSA....'" (internal citations omitted).

[4]  Plaintiffs rely on Department of Labor ("DOL") Fact Sheet #53 entitled "The Health Care Industry and Hours Worked" for the notion that an employer must "ensure" that its employees do not work during their meal periods. This Fact Sheet, which carries no force of law or deferential weight, when read in context, simply means that

Next, plaintiffs argue that the employer has a non-delegable duty to accurately record all time suffered or permitted to work by employees. (Plaintiffs' Brief, 20.) Although the employer is ultimately responsible for ensuring that work time of which it is, or should be, aware is properly paid, they cite no authority for the proposition here that employers cannot lawfully require employees to accurately record their time and, in fact, the contrary is true.[5] (NYPH Initial Mem., 10-11.)

Finally, the Complaint fails to plead any facts to plausibly support plaintiffs' assertion that defendants employed any uniform policy to ignore compensable work performed during missed or interrupted meal breaks or at other times or to instruct plaintiffs not to report the same. (Plaintiffs' Brief, 21.)

## POINT II

### THE FLSA AND NYLL CLAIMS ARE BARRED

Relying on *Pruell v. Caritas Christi*, 645 F.3d 81 (1st Cir. 2011), *cert. denied*, No. 11-690, 2012 WL 13796895 (Apr. 23, 2012), plaintiffs assert that defendants have failed to meet their burden of establishing that the named plaintiffs are employed pursuant to a CBA. (Plaintiffs' Brief, 9.) This makes no sense. The issue in *Pruell* was whether the complaint, which alleged only claims under state law, had been removed properly to the district court, that is, whether the district court had subject matter jurisdiction. In the absence of such jurisdiction,

---

employees must: (1) either receive their full meal period, or (2) be paid for the time that was automatically deducted. *See* U.S. Dep't of Labor Op. Ltr., FLSA 2007-1NA, 2007 DOLWH LEXIS 11, at *1 (May 14, 2007) ("the employer's proposal to discontinue the use of a time clock to record the meal period does not violate the FLSA so long as the employer accurately records actual hours worked, including any work performed during the lunch period.")

[5] *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352 (2d Cir. 2011), provides no support for plaintiffs. In *Kuebel*, the Second Circuit simply held that if an employer knows that an employee is working overtime and not recording it, the employer cannot rely upon the employee's failure to record the time as a defense under certain circumstances. The court did not hold that an automatic meal break deduction process with exception reporting is unlawful. Nor did the court hold, or otherwise suggest, that an employer must "ensure" that employees are not working during times when they are instructed to perform no work.

the First Circuit could not resolve the preemption issue. Here, plaintiffs elected to sue in federal court based upon a federal claim and to assert supplemental jurisdiction over their NYLL claim. Moreover, they both specifically allege that they were "member[s] of the NYSNA union and [were] subject to their CBA while employed with the defendants."[6] (Complaint, ¶¶ 71, 72.) There is no issue of jurisdiction and *Pruell* (645 F.3d 81) offers no help to plaintiffs.

## A.    The NYLL Claims are Preempted

Plaintiffs first assert that their NYLL claims are completely independent of any CBA and instead are derived from the substantive, nonnegotiable rights provided to employees by the NYLL. (Plaintiffs' Brief, 10-13.) This, however, ignores their Complaint. The agreed terms of employment pertaining to, for example, calculation of hours worked, calculation of premium pay rates, whether plaintiffs are entitled to additional compensation and whether plaintiffs were paid in accordance with the schedule set forth in the CBA, all require interpretation and analysis of the CBAs. (NYPH Initial Mem., 15-18.)

The First Circuit recently addressed this very issue in determining whether the exact same claims for compensation as are asserted here, but brought under the Massachusetts Weekly Wage Act, were preempted by Section 301. In affirming the District Court's decision, rendered on a motion to dismiss, the First Circuit assumed the claims were "non-waivable" yet nonetheless held:

> determining what (if anything) is owed—an inevitable issue here—depends at least arguably on interpretations and applications of the CBA at issue. . . .
>
> Plaintiffs insist that they are not raising any interpretive dispute about the CBA or the method of calculating wages, but only a factual dispute as to whether plaintiffs were paid for time spent working through meal breaks, before and after work, and

---

[6] Former named plaintiff Delancy was not a union member; however, as discussed above she has withdrawn from this action and, therefore, to the extent the Court finds that the claims are barred by section 301, the entire action should be dismissed. *Cavallaro v. UMass Mem. Healthcare, Inc.*, ___ F.3d ___, 2012 WL 1324267, at *7 (1st Cir. Apr. 18, 2012).

during training sessions. Even so, some provisions of the CBA governing the named plaintiffs' employment will likely need to be interpreted: for example, whether certain training programs are compensable depends on the employee having made a "timely" request to attend; and compensable meal time depends upon whether a nurse remained in the "patient care area."

But more importantly, resolving the factual dispute does not resolve whether or how much wages are owed. UMass has argued that additional compensation provided by the CBA—say, premium pay above state mandatory rate, or differential pay for certain shifts—may offset any deficiency created by other uncompensated time for purposes of satisfying state minima. Determining whether there are wages owed thus will require construing and applying the various "peculiarities of industry-specific wage and benefit structures" embodied in the CBA—a complicated task better-suited for an arbitrator's expertise and, regardless, which *Adames* already deemed a matter of interpretation requiring preemption. 258 F.3d at 13. And, of course, any claim for compensation above the state minima must be entirely dependent on the CBA.

*Cavallaro,* 2012 WL 1324267, at *6.

The analysis and result are exactly the same here. Adjudication of plaintiffs' claims will require interpretation of the CBAs to determine whether and under what circumstances the activities are compensable, *see, e.g.,* Complaint Ex. D, §§ 5.01, 5.02, 7.16, 8.01, Appendix A(VI.1), and the applicable rate(s) of pay, *id.,* §§ 6.01-6.03; 10; Schedule A; *see also* NYPH Initial Mem., 15-19. In addition, and assuming plaintiffs are entitled to overtime, the CBAs contain provisions which modify the statutory, 40-hour-per-workweek overtime calculation period. (Complaint, Ex. D, § 6.03.) These provisions will need to be consulted to determine the amount of overtime, if any, that is owed; whether it is owed on a daily or bi-weekly basis and whether any payments under the CBA may be taken as a credit for any statutory overtime that might be deemed to be owed. *See, e.g., Cavallaro,* 2012 WL 1324267, at *6; *Pruell,* 2012 WL 1324455, at *3; 29 U.S.C. § 207(e)(5)-(7), (h); 29 C.F.R. § 778.200, 778.202; N.Y. Comp. Codes. R. & Regs., tit. 12, § 142-2.2 ("[a]n employer shall pay an employee for overtime . . . in the manner and methods provided in and subject to . . . the Fair Labor Standards Act . . . .")

While plaintiffs try to avoid this by asserting that their claims assert "nonnegotiable rights that arise exclusively from the FLSA and NYLL," Plaintiffs' Brief, 10, the case on which they rely, *Livadas v. Bradshaw*, 512 U.S. 107 (1994), is readily distinguishable. In *Livadas*, a former employee brought a claim under Section 203 of the California Labor Code, which penalizes employers who willfully withhold wages from employees. 512 U.S. at 111-112. The *Livadas* Court rejected the argument that enforcement of Section 203 was preempted merely because the employee was a union member, noting that the particular claims asserted by the employee merely required reference to a calendar (to see if the employee had been paid on time) and to the collective bargaining agreement (for the wage rate to calculate damages). *Id.* at 124-125. The Supreme Court did not hold that Section 301 could never preempt a state wage payment statute. Indeed, the Court said "[t]his is not to say, of course, that a § 203 penalty claim could never be pre-empted by § 301."[7] *Id.* at 125 n.19.

Where, as here, the resolution of such claims requires the court to interpret the CBAs to determine whether compensation is owed, preemption is appropriate, *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 & n.7 (1988); *Vera v. Saks & Co.*, 335 F.3d 109, 115-16 (2d

---

[7] Plaintiffs' assertion (Plaintiffs' Brief, 14) that the provisions of the NYLL cannot be waived by an employee's collective bargaining representative was rejected by the New York Court of Appeals. *See, e.g., American Broad. Cos. v. Roberts*, 61 N.Y.2d 244, 250 (1984) (finding a voluntary waiver in a CBA relative to the scheduling and compensation for meal break provisions of NYLL). Moreover, plaintiffs' attempt to distance their claims from the collective bargaining agreement should be rejected. (Plaintiffs' Brief, 11-13.) Unlike in the cases cited by plaintiffs, plaintiffs' NYLL claims cannot be adjudicated without the interpretation of provisions of their collective bargaining agreement. *Self v. United Parcel Serv., Inc.*, 970 P.2d 582, 588 (N.M. 1998) ("There is no need to look to the collective bargaining agreement because its terms, or even its existence, are not relevant to Plaintiffs' case."); *Rawson v. Tosco Ref. Co.*, No. C-95-3904 (SI), 1996 WL 33991, at *4 (N.D. Cal. Jan. 24, 1996) (holding that the rights asserted arose solely under California law); *Sellars v. Safeway, Inc.*, No. Civ. 05-1013-HA, 2006 WL 2729269, at *2 (D. Ore. Sept. 22, 2006) (as collective bargaining agreements contained no provisions relevant to plaintiffs' state law claims, such claims were independent of agreement and not preempted); *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 429-30 (7th Cir. 2010), *cert. denied*, 113 S. Ct. 933 (2011) (Wisconsin donning and doffing statute requires collective bargaining agreements be "*ignored*," rather than "interpret[ed] or enforce[ed]" and is not preempted); *Ralph v. Lucent Techs., Inc.*, 135 F.3d 166, 171 (1st Cir. 1998) (disability rights claim arose under state and federal law and did not require interpretation of collective bargaining agreement); *Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 44 (1st Cir. 1997) (workers' compensation law preempted because it required interpretation of collective bargaining agreement).

Cir. 2003); *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 600 (E.D.N.Y. 2007); NYPH Initial Mem. at 18-19.[8]

**B.    The FLSA Claims are Barred**

Similarly, when the resolution of the FLSA claim would embroil the Court in the interpretation and application of a collective bargaining agreement to determine whether specific activity is compensable and at what rate--as plaintiffs' claims do--section 301 precludes that claim. *See, e.g.*, *Vadino v. A. Valey Eng'rs*, 903 F.2d 253 (3d Cir. 1990); *Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir. 2001); *Townsend v. BC Natural Chicken LLC*, Civ. A. No. 06-4317, 2007 WL 442386, at *3-4 (E.D. Pa. Feb. 2, 2007); NYPH Initial Mem. 19-20.[9]

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), does not require a different result. (Plaintiffs' Brief, 14.) *Barrentine* held that the submission of an employee's claim for violation of the FLSA's minimum wage provisions to contractual dispute resolution procedures pursuant to a CBA did not preclude a later lawsuit because "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate" and, thus, "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained

---

[8] The cases cited by plaintiffs are distinguishable and do not support their position. (Plaintiffs' Brief, 11.) *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), did not consider preemption under the LMRA but, rather, held that the *NLRA* did not preempt the state insurance law at issue. And, in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1067, 1070 (9th Cir. 2007), the Ninth Circuit merely held that a legislative provision that allowed collective bargainers to opt out of a state law benefit did not mean that unionized employees forfeited the benefit if they failed to negotiate it.

[9] Plaintiffs' attempt to distinguish *Vadino* fails. (Plaintiffs' Brief, 15.) In *Vadino* the court held that certain matters are subject to collective bargaining, and the FLSA "contains no language suggesting that an action filed [under the FLSA] would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement" as to those matters. 903 F.2d at 265. Only after the issue of contract interpretation was resolved under the LMRA would plaintiff be able to proceed with his claim for overtime under the FLSA. *Id.* Here, as in *Vadino*, questions arising under the collective bargaining agreement must be answered before plaintiffs' overtime claims could be adjudicated. Thus, like *Vadino*, plaintiffs must comply with the LMRA's procedures to pursue their FLSA claim. Similarly, *Martin* agreed with *Vadino* that an FLSA claim that required the interpretation of a collective bargaining agreement should be subject to the LMRA's procedures, including the LMRA's six-month statute of

compensation agreement." *Id.* at 740-41 (citations omitted). *Barrentine* did not hold that a claim that an employer failed to pay for all hours worked need not be arbitrated prior to commencement of a lawsuit.[10]

The CBAs will have to be interpreted to determine how much plaintiffs should have been paid. Accordingly, plaintiffs' claims must first be pursued through the grievance and arbitration provisions of the CBAs.[11] *See* NYPH Initial Mem., 20-21; *Hoops v. Keyspan Energy*, 794 F. Supp. 2d 371, 379-80 (E.D.N.Y. 2011); *Eldred v. Comforce Corp.*, No. 3:08-CV-1171(LEK/DEP), 2010 WL 812698, at *5-6 (N.D.N.Y. Mar. 2, 2010).

## POINT III

### PLAINTIFFS LACK STANDING TO REPRESENT ANYONE BUT THEMSELVES IN THIS ACTION

First, before a plaintiff may seek to represent a class, he or she must first have a viable claim in their own right. *Pruell,* 2012 WL 1324455, at *3; *Pruell,* 645 F.3d at 84.   Plaintiffs here do not.

Second, as salaried employees, neither plaintiff is part of the class they seek to represent. (NYPH Initial Mem., 22-23.)  Plaintiffs' effort to counter this by asserting that they "have alleged they were hourly employees" is contradicted by their allegation that they were both "member[s] of the NYSNA union and subject to their CBA. . . . ," which is annexed to the

---

limitations period. 269 F.3d at 679.  Application of the LMRA's limitation period rendered the claim untimely. *Id.* at 676, 680 (affirming district court's dismissal of entire case on timeliness grounds).

[10] Plaintiffs' assertion that an employer could use a collective bargaining agreement to "circumvent the requirements of the FLSA and compensate employees at rates lower than the statutory minimums" is baseless. (Plaintiffs' Brief, 15, n.18.)  CBA terms that are affirmatively *inconsistent* with the FLSA's minimum requirements are unlawful and without force. *See Vadino*, 903 F.2d at 264-65.

[11] Plaintiffs' assertion that they are "not required to exhaust arbitration procedures on statutory claims absent a clear and unmistakable intent to arbitrate" is a red herring. (Plaintiffs' Brief, 16.)  The issue here is simply whether the claims asserted require interpretation of the CBA provisions.  If so, LMRA preclusion applies.  They do, thus requiring resort to the CBA's grievance and arbitration procedures and the scope of the arbitration provision is not relevant at this point.

Complaint and specifically provides that Registered Nurses, like plaintiffs, are paid a salary.[12] (Complaint, ¶¶ 71, 72; Ex. D, §§ 1, 6, Schedule A; *see also* Minsky Aff., ¶¶ 5, 8-9.)

Third, plaintiffs assert that the determination of whether they were properly classified as exempt is not to be resolved on a motion to dismiss. (Plaintiffs' Brief, 22-23.) This ignores that plaintiffs both allege they were employed as registered nurses. (Complaint, ¶¶ 71, 72.)   As such they clearly fall within the professional exemption. 29 C.F.R. § 541.301(e)(2).

Finally, plaintiffs' assertion that the propriety of their class allegations should not be determined on a motion to dismiss, ignores the implausible scope of the class they seek to represent and that these issues can be addressed on a 12(b)(6) motion.  NYPH Initial Mem., 23-24; *see also Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) ("[w]here 'the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims,' the court may address class certification issues in a 12(b)(6) motion.") (citation omitted).

### Conclusion

For the foregoing reasons, and those previously stated, Defendant The New York and Presbyterian Hospital respectfully requests an Order dismissing the Complaint against it in its entirety, without leave to replead.

---

[12] Inappropriately contained in the April 16, 2012 Declaration of Jessica Witenko is additional legal argument regarding plaintiffs' salaried status.  In support of this argument, plaintiffs again rely on the dated paystubs of Barbara Boyd and Antonio Garcia. (Witenko, Decl., Ex. D.) These paystubs do not establish that *plaintiffs* have standing to pursue the claims asserted in the Complaint or that *plaintiffs* (or for that matter Boyd or Garcia) were not paid on a salaried basis.  In addition to having nothing to do with the plaintiffs, those paystubs are from 2004 and 2005.  Moreover, Garcia's employment terminated effective February 1, 2006 and Boyd's employment terminated effective September 21, 2006, both well outside any applicable FLSA statute of limitations.  (Bart Minsky Reply Aff., sworn to on January 24, 2011, submitted in *Nakahata I,* ¶¶ 2, 3.)

New York, New York
May 16, 2012

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:  /s/ Kenneth J. Kelly
　　　Kenneth J. Kelly
　　　James S. Frank
　　　Kenneth W. DiGia
　　250 Park Avenue
　　New York, New York  10177-1211
　　(212) 351-4500

WILLKIE FARR & GALLAGHER

By:  /s/ Terence K. McLaughlin
　　　Terence K. McLaughlin
　　787 Seventh Avenue
　　New York, NY 10019
　　(212) 728-8000

Attorneys for Defendant The New York
and Presbyterian Hospital