Kenneth J. Kelly
James S. Frank
Kenneth W. DiGia
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4500

Terrence K. McLaughlin
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendant
New York-Presbyterian Healthcare System, Inc.
Herbert Pardes and Wayne Osten

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ x

MASAHIRO NAKAHATA, DIANA GARDOCKI and
CYNTHIA DELANCY,

      **ECF CASE**

on behalf of themselves and all other employees similarly
situated,

                    Plaintiffs,

      Docket No. 11-cv-6658 (PAC) (RLE)

- against -

NEW YORK-PRESBYTERIAN HEALTHCARE
SYSTEM, INC., THE NEW YORK AND
PRESBYTERIAN HOSPITAL, HERBERT PARDES,
AND WAYNE OSTEN,

                Defendants.

------------------------------------------ x

**REPLY MEMORANDUM OF DEFENDANTS NEW YORK-PRESBYTERIAN
HEALTHCARE SYSTEM, INC., HERBERT PARDES AND WAYNE OSTEN**

## TABLE OF CONTENTS

**PAGE**

ARGUMENT ............................................................................................................2

    THE COMPLAINT FAILS TO ALLEGE ANY FACTS SHOWING
    THAT THE MOVING DEFENDANTS WERE THEIR EMPLOYER.............................2

        A.    The Broad Statutory Definition of "Employer" Is Not
            a Substitute for Plausible Factual Allegations ...............................................2

        B.    Plaintiffs Have Failed to Allege Any Facts Supporting Either
            an "Integrated Enterprise" or "Joint Employer" Theory.................................3

        C.    The Complaint Fails to Allege Facts Establishing
            Liability of the Individual Defendants.............................................................8

CONCLUSION.......................................................................................................11

Defendant New York-Presbyterian Healthcare System, Inc. ("System, Inc."), Dr. Herbert Pardes and Wayne Osten (collectively, the "Moving Defendants") submit this memorandum in reply to plaintiffs' memorandum of law in opposition to the Moving Defendants' motion to dismiss the complaint (the "New Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs[1] do not dispute that the New Complaint, like the defective pleading in their earlier action, seeks to hold the Moving Defendants and defendant The New York and Presbyterian Hospital (the "Hospital") liable for unpaid wages of more than 52,000 persons who are in fact each employed by one of the approximately two dozen acute-care hospitals, specialty institutes and continuing care centers that are part of New York-Presbyterian Healthcare System (the "NYPHC System"), or by the more than 500 facilities connected in some way to such participant. Rather than pleading any facts to support this ambitious, and facially implausible, theory, plaintiffs do little more than proffer a skeletal set of conclusions.

Plaintiffs still do not even allege which of the defendants employed the named plaintiffs, let alone any of the horde of prospective class members; they merely claim that the New Complaint corrects prior defects by "set[ting] forth detailed allegations as to plaintiff's *employment locations*." (Plaintiffs' Brief, 2, emphasis added.) And they continue to mislead the Court by using their own fictional definition "NYP Healthcare System" to refer only to the Hospital and System, Inc. (Complaint ¶ 15.) The New York-Presbyterian Healthcare System is neither the Hospital nor System, Inc. (as System, Inc.'s certificate of incorporation and even the newsletters and Form 990 annexed to the Witenko Declaration as Exhs. E, F, G, H and I, show), but is an unincorporated association of healthcare institutions which collaborate to improve patient care and research.

---

[1] Plaintiff Cynthia Delancy has discontinued her participation in the action. (*See* DE No. 34, 4/20/12.) She was the only named plaintiff who was not covered by a collective bargaining agreement.

**Argument**

**THE COMPLAINT FAILS TO ALLEGE ANY
FACTS SHOWING THAT THE MOVING
DEFENDANTS WERE THEIR EMPLOYER**

A.    **The Broad Statutory Definition of "Employer"
Is Not a Substitute for Plausible Factual Allegations**

Virtually conceding that the New Complaint relies on conclusory assertions with little or no supporting facts, plaintiffs repeat the argument that this Court previously rejected, namely, that Fed. R. Civ. P. 8 requires only "notice pleading, not fact pleading." This contention misstates the law as set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). As this Court held in 2011, claims under the FLSA or its New York counterpart are not exempt from the obligation that a complaint set forth substantial and plausible facts which provide the grounds for entitlement to relief, as more fully set out in the Moving Defendants' initial papers at 9-11.

The two named plaintiffs seem unwilling even to state who actually employs them. Instead, they seek to impose liability on the Hospital and System, Inc., a not-for-profit organization that is precluded by law from providing medical services, for the wages of 52,000-plus individuals who are employed by some two dozen healthcare providers at hundreds of unrelated ancillary facilities spanning the tri-State region.

Moreover, the more diffuse the relationship among the defendants and non-defendant entities who are mentioned in the complaint is, the more implausible the existence of any employer/employee relationship becomes. The more contrary to "judicial experience and common sense" (*Iqbal,* 556 U.S. at 679) (citation omitted) the *conclusions* alleged in the New Complaint are, the more specific the *factual* allegations in the New Complaint must be in order to demonstrate that the conclusions are plausible. As the Seventh Circuit stated in *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010) (cited by plaintiffs), *Iqbal* requires that "the

plaintiff must give enough details about the subject-matter of the case to present a story that holds together." The conclusory allegations in the New Complaint do not support any "story" whereby the Hospital or the Moving Defendants can be liable for the wages of more than 52,000 people.

While the term "employer" as defined in the FLSA goes beyond the traditional common law concepts of master and servant, that definition does not nullify the concept of separate corporate entities.[2]  Absent some basis such as fraud for piercing the "corporate veil," even related corporations employ their own employees.  Because plaintiffs claim otherwise, *Iqbal* and *Twombly* require them to plead plausible facts that bring the Hospital, System, Inc. and the multiple non-party entities referred to in the New Complaint within the broad definition of "employer" in the FLSA.  Indeed, the fact that the FLSA definition of "employer" is so broad and abstract is all the more reason why, under *Iqbal*, a plaintiff must allege specific facts showing that a person or entity that would not be an "employer" under the common law concepts should be deemed to be an "employer" under the FLSA.  Plaintiffs simply have failed to allege such facts as to the Moving Defendants or the Hospital.

**B.      Plaintiffs Have Failed to Allege Any Facts Supporting Either an "Integrated Enterprise" or "Joint Employer" Theory**

Plaintiffs' brief attempts to fill the factual gaps in their conclusory allegations by referring to two concepts used to hold an entity liable for unpaid wages of individuals who may not be in fact the entity's actual "employees," as that word is commonly understood outside of the FLSA context, and by claiming that defendants "misapprehend" their theory.  It is therefore important to discuss each concept briefly in order to demonstrate that plaintiffs erroneously cite

---

[2] The NYLL applies the same standards of "employer" as the FLSA and therefore the discussion herein applies to both claims. (Moving Defendants' Initial Mem., 12, n.5.)

to multi-"factor" tests to mask the fact that the New Complaint does not contain the basic factual

allegations needed to hold an entity an FLSA "employer" of someone else's employees.[3]

The two theories were concisely described in *N.L.R.B. v. Browning-Ferris Indus.

of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982), as follows:

> The "joint employer" and "single employer" concepts are distinct. . . .
>
> A "single employer" relationship exists where two nominally separate entities are actually part of a *single integrated enterprise* so that, for all purposes, there is in fact only a "single employer." The question in the "single employer" situation, then, is whether the two nominally independent enterprises, in reality, constitute only *one integrated enterprise*. . . .
>
> Thus, the "single employer" standard is relevant to the determination that "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." [Emphasis added, citations omitted.]

A so-called "single employer" is usually found where two related corporations engage in an

integrated production process, such as in *Anderson v. Theriault Tree Harvesting, Inc.*, No. Civ.

08-330-B-W, 2010 WL 323530 (D. Me. Jan. 20, 2010), where Corp. A felled the trees and Corp.

B transported the logs. Both entities were held to be part of an "integrated enterprise," and each

was liable for unpaid wages of all workers participating in the process. *Browning-Ferris*

continues (691 F.2d at 1122-23):

> In contrast, . . . a finding that companies are "joint employers" assumes in the first instance that companies are "what they appear to be" – independent legal entities that have merely "historically chosen to handle jointly . . . important aspects of their employer-employee relationship." [Citation omitted.]
>
> In "joint employer" situations no finding of a lack of arm's length transaction or unity of control or ownership is required, as in "single employer" cases. . . . The basis of the finding is simply that one employer while contracting in good faith with an otherwise

---

[3] Defendants do not agree that the test for "joint employment" under the FLSA should be anything other than the analysis set out by the Second Circuit in, for example, *Barfield v. N.Y.C. Health and Hosp. Corp.*, 537 F.3d 132 (2d Cir. 2008). Since, however, plaintiffs' allegations are insufficient under either test, the Court need not resolve this issue.

> independent company, *has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.* [Citation omitted.] Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment. . . . [Emphasis added and citations omitted.]

In "joint employer" situations, an individual is employed by two different entities, but his work simultaneously benefits two or more employers, *and* one employer controls the second. In such cases, hours worked for employer A and employer B must be aggregated for FLSA overtime calculations. *See* 29 C.F.R. § 791. For example, a nurse may work at the acute care hospital during the week and at a nursing home on the weekend. If both facilities are corporations owned by the same holding corporation; the officers and directors of each corporation are the same; the two share the same human resources department; and they divide the employee's working conditions in order to pay only straight time, the corporations could be held to be "joint employers". *See, e.g.*, U.S. Dep't of Labor Op. Ltr., FLSA 2005-17NA, 2005 WL 6219105 (June 14, 2005).

Courts have used various multi-factor tests to determine whether distinct entities are either an "integrated enterprise" or "joint employers." While such factors focus on the "economic realities" analyzed under one or another "test,"[4] these tests come into play *only if the employees plead facts that suggest that any "test" should be applied at all.*

Here, the New Complaint is devoid of any description of how the two remaining named plaintiffs either (a) worked at an employer that was part of an "integrated enterprise" consisting of the Hospital or System, Inc. or any other entity, or (b) simultaneously worked for two interconnected entities such that the separate entities should be deemed "joint employers." Despite the wealth of information about the NYPHC System available to plaintiffs' counsel on

---

[4] The Second Circuit has eschewed mechanical reliance on any particular set of "factors" and looks to the ' "circumstances of the whole activity." ' *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (citation omitted). This decision emphasizes that application of a "joint employer" or "integrated enterprise" theory is highly fact-specific, thus requiring fact-specific pleading in order to meet *Iqbal's* plausibility standard.

the Internet and the plaintiffs' years of employment at the Hospital, there is no factual description of any such multi-entity "integrated" medical treatment "enterprise" in the New Complaint; rather, it simply declares, without explanation, the conclusion that the Moving Defendants and NYPH are an "integrated . . . system." Moreover, in a rare display of detail, the New Complaint states that *each plaintiff worked at all times only at a single location, the Hospital's Columbia University site, and not for two entities at different times during a work week.* (Complaint ¶¶ 71, 72.) Worse yet, there are no factual allegations explaining how System, Inc. could be part of an "integrated enterprise" to provide medical services, when it is undeniable that System, Inc. is not authorized in its charter to render medical services, nor is there any allegation that either plaintiff worked "X" hours at the Hospital and "Y" hours at System, Inc. - or anywhere else.

The distinct "integrated enterprise" and "joint employer" theories may be available to employees to recover unpaid wages, but, since *Iqbal*, a complaint needs to plead at least a bare minimum of plausible facts to support the conclusion that an entity is liable as an FLSA "employer" under either of such theories. The New Complaint here does not even come close to such an allegation, and even the various factors in the multi-part "tests" emphasized in plaintiffs' Brief are nothing more than legal conclusions or abstract paraphrases of the "factors."

These flaws are readily seen as the New Complaint tries, but fails, to plead facts that seek to hold System, Inc. liable as an FLSA "employer." It alleges:

> 17. NYP Healthcare System [using plaintiffs' fictional definition of the Hospital and System, Inc.] is an enterprise engaged in the operation of hospitals and/or the care of the sick and is a healthcare consortium. *This is contradicted by the NYPHC System newsletters attached to plaintiffs' opposition, which discuss matters of academic or professional interest and not some "consortium."*

> 23. The NYP Healthcare System [again, erroneously defined as the Hospital and System, Inc.] comprise a single, integrated enterprise, as its entities perform related activities through

common control for a common business purpose. *This is pure conclusion, merely parroting a common "test" factor.*

24. As an integrated employer, [the four corporate and individual] defendants hold themselves out as one large system. For example, defendants describe themselves as one of the world's greatest healthcare systems. *"One large system" and "greatest healthcare system[]" are meaningless for FLSA "employer" analysis.*

25. In fact, . . . System, Inc. also claims that the NYP Healthcare System is the largest secular, not-for-profit healthcare system in the United States, and the largest not-for-profit employer in New York City. *Neither size nor non-profit status creates a FLSA "employer."*

26. Defendants maintain 250 health care facilities and centers and more than 270 affiliated health care facilities and centers, *none of which is identified.*

27. Through its website maintained for the NYP Healthcare System, . . . System, Inc. admitted that in 2008 it employed over 52,000 full time employees and operated 24 acute care hospitals. *The exhibits relied on in support of this in fact state only, for example, that there are a total of 52,000 employees at 32 facilities,[5] not that each facility employs all 52,000 persons.* (Witenko Declaration, Exs. C, D.)

28. As further evidence of their integration, . . . System, Inc. publishes a "System Standard" newsletter and "Member News," which highlight the healthcare initiatives of the member institutions. *"Healthcare initiatives" do not create a joint employer or integrated enterprise.*

29. Further, . . . System, Inc's 990 form describes the organization's mission as being the sponsor/parent to a number of tax exempt healthcare providers as well as coordinating [support] services to such entities. *The status of "parent" or "sponsor" does not create an FLSA "employer."*

---

[5] These exhibits also refer to a "disclaimer" - which plaintiffs take care to omit - and which states: "New York-Presbyterian Hospital (NYPH), New York-Presbyterian Healthcare System, Inc. (System, Inc.) and the individual member institutions of the New York-Presbyterian Healthcare System are managed and operated by separate not-for-profit corporations. NYPH and each individual member institution has its own Board of Trustees, management, employees and medical staff, and is responsible for its own employment and other policies, practices and procedures. Neither NYPH nor System, Inc. provides or is licensed to provide medical care to patients at any member institution or otherwise manages or operates any member institution." This can be found at www.nypsystem.org/disclaimer/html, as visited on 5/7/12.

30.    .   .   . System, Inc. is also controlled and operated through centralized management which extends throughout the NYP Healthcare System.   For example, centralized management includes officers such as Dr. Herbert Pardes . . . and Wayne Osten. . . for the entire system and oversight by a [*unnamed*] senior executive team and board of directors.   *This is a meaningless tautology because plaintiffs' fictional definition of "NYP Healthcare System" is System, Inc. and the Hospital.  Moreover, the phrase "the entire system" lacks any sort of definition or scope.*

31.    Additionally, defendants have centralized supply chain management, and financial, computer, payroll and health records systems that are integrated throughout their locations.  *Another conclusion, without any details.*

32.    The NYP Healthcare System has [*unspecified*] common ownership.  *As with paragraph 30, plaintiffs' definition renders this allegation meaningless.   In fact, the NYPHC System participants are all not-for-profit entities without stockholders.*

33.  Therefore, defendants constitute an integrated, comprehensive, consolidated healthcare delivery system, offering a wide range of services.  *This is the essence of a conclusory pleading summarizing other conclusory pleadings.*

These skeletal allegations - *none of which even refers to labor or employment functions* - do not provide any factual basis for the legal conclusions that the two entity and two individual defendants are some type of "integrated enterprise" or "joint employers" of the 52,000 persons at the more than 500 "facilities," let alone that each plaintiff worked for all of them.

C.    **The Complaint Fails to Allege Facts Establishing Liability of the Individual Defendants**

While plaintiffs argue (Plaintiffs' Brief, 14) that the two individual defendants can be liable to employees under the FLSA if they exercise "operational control" over the business, they studiously avoid explaining what "operational control" really means. "Operational control" requires substantial "hands-on" management of the employment assets of the business, and typically occurs in closely-held companies where the CEO or general manager has substantial, if not day-to-day, contact with employees, customers, or both. *See, e.g., Torres v. Gristede's*

8

*Operating Corp.*, No. 04 Civ. 3316 (PAC), 2011 WL 4571792, at *3 (S.D.N.Y. Sept. 9, 2011) (finding individual liability where "there is no aspect of Gristede's operations from top to bottom and side to side which is beyond [sole owner, President and CEO] Mr. Casimatidis's reach"); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003).

In *Herman v. RSR Security Services, Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted), the court held that not only must the executive theoretically "possess[ ] the power to control the workers in question," as any executive officer *ex officio* does, the executive must control employment when viewed "with an eye to the 'economic reality' presented" by the *facts* of each case. In *Herman*, the executive was liable for wages because he personally hired individuals and "on occasion, supervised and controlled employee work schedules . . . [and] assignment of guards to [particular] work stations." (*Id.* at 140). Here plaintiffs make no such allegations against Dr. Pardes or Mr. Osten. In a similar manner, the Court of Appeals for the First Circuit, in *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998), focused on the actual exercise of "operational control" and management of the "business's operations on a day-to-day basis" to find "personal responsibility for making decisions about the conduct of the business *that contributed to the violations of the [FLS]Act."* (Emphasis added.) The allegations in the New Complaint do not even come close to such specificity needed to achieve plausibility. *See Wolman v. Catholic Health Sys. of Long Island, Inc.*, ___ F. Supp. 2d ___, 2012 WL 566255, at *6 (E.D.N.Y. Feb. 16, 2012) (similar complaint by plaintiffs' counsel here held to be "void of any facts that [the individual defendant] had any direct contact with the Lead Plaintiffs" and dismissed) (citation omitted).

It needs little authority other than "judicial experience and common sense" (*Iqbal*, 556 U.S. at 679) (citation omitted), to recognize that as a company gets larger, the more removed executive management becomes from "operational control" of day-to-day activities. While employer status under the FLSA does not require "continuous monitoring" or "looking over [employees'] shoulders at all times" (*Herman*, 172 F.3d at 139-140), more specificity than is

9

alleged in the New Complaint is needed.  Plaintiffs assert (Plaintiffs' Brief, 16) the astounding conclusion that Dr. Pardes and Mr. Osten do not "merely control . . . System, Inc., but instead control the entire . . . . Healthcare System, which is comprised not only of . . . System, Inc. but also of other nominally distinct entities including [the Hospital]. . . ", an empire of 52,000–plus persons in three States.  They follow this claim with the eye-opening assertion: "It cannot be said that these allegations are implausible."  But they are exactly that, on their face.

The allegations regarding Dr. Pardes and Mr. Osten are little more than vague conclusions, parroting general caselaw principles.  (*See, e.g.*, "Dr. Pardes . . . makes decisions that concern the reviewing and counseling of defendants [sic] regarding employment decisions, including hiring and firing Plaintiffs and Class Members" (Complaint, ¶ 46); "Because Dr. Pardes has authority to hire and fire employees, . . . [he] has the power to hire and fire employees" (Complaint, ¶51); "Mr. Osten . . . makes[s] decisions that concern payroll functions across NYP Healthcare System" (Complaint, ¶ 66).)  Others are simply irrelevant. *See, e.g.*, Dr. Pardes' successful fundraising (Complaint, ¶ 43) or television appearances (Complaint, ¶50), and Mr. Osten's congratulating award winners (Complaint, ¶63).

Plaintiffs cite *Gordon v. Kaleida Health*, No. 08-CV-378S, 2008 WL 5114217 (W.D.N.Y. Nov. 25, 2008), to support their pleading against Dr. Pardes and Mr. Osten. Plaintiffs provide no reason why that lone decision, rather than the more recent and better reasoned *Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2009 WL 3153150 (W.D.N.Y. Sept. 30 2009) (*Tracy I*), *adopted in part*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) (*Tracy II*), should guide this Court's analysis. (*See* discussion in Moving Defendants' Initial Mem., 15-18.)

In fact, the *Tracy* decisions offer a far more compelling analysis than does the *Gordon* decision.  *Gordon* was decided six months prior to the Supreme Court's decision in *Iqbal*, and perhaps lacking the benefit of the guidance provided in that opinion, focused on "notice pleading requirements" *Id.* at *4.  *Iqbal* specifically addressed the pleading standard for claims against individual defendants.  *See* 556 U.S. at 683 (addressing sufficiency of claims

10

against federal officials and holding that plaintiff had not alleged sufficient facts to plausibly suggest their individual liability). *Tracy*, which was decided after the *Iqbal* decision was issued, relies heavily on that precedent in analyzing – and ultimately rejecting – allegations nearly identical to those here. *See Tracy I*, 2009 WL 3153150, at *5-6; *see also Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474 (WK), 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (dismissing complaint against individual defendants because plaintiff failed to allege facts establishing a "power to control"); *see also Cavallaro v. Umass Mem. Healthcare, Inc.,* No. Civ. A 09-40152-FDS, 2011 WL 2295023 at *5-6 (D. Mass. June 8, 2011), *rev'd on other grounds*, ___ F.3d ___, 2012 WL 1324267 (1st Cir. Apr. 18, 2012). In light of *Iqbal* and following *Tracy* and *Cavallaro*, the allegations against Dr. Pardes and Mr. Osten should be dismissed.

## Conclusion

For the foregoing reasons, and those previously stated, Defendants New York-Presbyterian Healthcare System, Inc., Herbert Pardes and Wayne Osten respectfully request that the New Complaint be dismissed as against them, without leave to replead.

New York, New York
May 16, 2012

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Kenneth J. Kelly
    Kenneth J. Kelly
    James S. Frank
    Kenneth W. DiGia
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500

WILLKIE FARR & GALLAGHER

By:  /s/ Terence K. McLaughlin
        Terence K. McLaughlin

787 Seventh Avenue
New York, NY 10019
(212) 728-8000

Attorneys for Defendants: New York-Presbyterian
Healthcare System, Inc., Herbert Pardes and Wayne Osten